GEORGE B. ADAMS *vs.* WILLIAM T. MESSINGER.

Middlesex.   February 2, 1888. — June 19, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Equity — Specific Performance — Personal Property — Sale — Divisible Contract — Part Performance — Letters Patent — Foreign Application — Assignment.*

Specific performance of an agreement by the owner of a patent to furnish and deliver the patented article will be decreed, if it does not appear that any special or peculiar skill is required to make it.

If such owner further agrees that, if he makes improvements in the article and receives letters patent therefor here, he will apply for letters patent in Canada, will assign them if obtained, and will not prejudice them or the monopoly secured, he may be specifically ordered to assign his title to such improvements as to Canada, and enjoined from alienating or incumbering it.

BILL IN EQUITY, filed March 15, 1887, alleging that the defendant, who was the owner of letters patent of the United States, and the plaintiff, who was the owner of similar letters patent of the Dominion of Canada, executed the following instrument under seal.

"Memorandum of agreement made this sixth day of May, 1886, between William T. Messinger and George B. Adams, both of Cambridge, Massachusetts, which witnesseth as follows:

"Said Messinger agrees to furnish and deliver to said Adams, within three months from this date, one perfect working injector of the sizes one, two, three, four, five, and six, in place of the same number of said machines now in possession of said Adams, the said injectors to be tested under the following conditions, viz.: to be connected with street water-main and steam pressure varying from twenty to one hundred and fifty pounds; to lift from four to twenty feet steam pressure varying from twenty to one hundred and fifty pounds. Upon delivery of said injectors, so tested, said Adams agrees to pay said Messinger ($500) five hundred dollars in cash.

"Said Messinger further agrees to furnish and deliver to said Adams, within six months from this date, one perfect working injector of sizes seven, eight, nine, ten, and twelve, which shall

be tested under the same conditions as numbers one, two, three, four, five, and six, and also to permit said Adams to copy any drawings which said Messinger may make, or have made, of any of said sizes of injectors or alterations therein. Upon the delivery of said injectors, so tested, said Adams agrees to pay said Messinger for said sizes seven, eight, nine, ten, and twelve the list price according to catalogue now printed, with eighty per cent discount, and surrender to said Messinger his promissory note for $181.13, to order of George B. Adams, dated of even date herewith. The foregoing tests shall be made in presence of said Adams, or some person appointed by him for that purpose.

"By the term 'injector' in this agreement is meant the W. T. M. injectors for steam boilers made under and according to letters patent of the Dominion of Canada issued to said Messinger, dated August 1, 1884, and numbered 19,876, dated September 8, 1884, and numbered 20,162, and dated September 8, 1884, and numbered 20,164, and similar letters patent of the United States.

"Any and all improvements that said Messinger may make in injectors for steam boilers shall be, so far as the Dominion of Canada is concerned, for the benefit of said Adams, and whenever said Messinger shall take out any letters patent of the United States for said injectors for steam boilers, he or his heirs or assigns shall forthwith apply for letters patent of the Dominion of Canada, and upon receiving the same shall immediately, without any further consideration, assign and convey the same to said Adams or his legal representatives, and further that in any business or operation he may engage in under letters patent of the United States, or in any other business, he will not directly nor indirectly do any act to the prejudice of the said letters patent of the Dominion of Canada, or the monopoly thereby secured.

"Witness our hands and seals the day and year first above written.                    Wm. T. Messinger.  (L. S.)
                                      Geo. B. Adams.      (L. S.) "

The bill also alleged, that the defendant, since the date of the agreement, had taken out letters patent of the United States for improvements in such injectors, viz. Letters Patent No. 350,545,

No. 350,546, and No. 350,547, all bearing date October 12, 1886 ; that the plaintiff had always been ready, and had offered specifically, to perform the above agreement on his part ; that the plaintiff had frequently applied to the defendant, and requested him to perform the agreement on his part, but he had refused and neglected to perform the same, or any part thereof ; and that by reason of the peculiar nature and construction of such injectors, of which the defendant was the inventor, the plaintiff had been unable to supply himself therewith elsewhere, but could only obtain them at the hands of the defendant, and had suffered great and peculiar and unusual damage by reason of the defendant's refusal to furnish them, and by reason of the defendant's refusal to apply for and assign to him Canadian letters patent.

The prayer of the bill was, — 1st, that the defendant might be decreed specifically to perform the agreement, and that for the purposes aforesaid all proper directions might be given and inquiries made ; 2d, that there might also be an assessment of the damages sustained by the plaintiff by reason of the defendant's neglect to perform his agreement, and that the defendant might be ordered to pay the same ; and, 3d, that in the mean time the defendant might be restrained from alienating or encumbering his right to letters patent of the Dominion of Canada.

The defendant demurred to the bill on the following grounds : " 1. That the plaintiff has not stated such a case as entitles him to any relief in equity against the defendant.   2. That the plaintiff has a plain and adequate remedy at law.   3. That the agreement, specific performance of which the plaintiff prays may be decreed, is a contract for personal services.   4. That the specific performance, which the plaintiff prays may be decreed, requires the exercise of mechanical skill, intellectual ability, and judgment.   5. That the specific performance of said agreement involves the building of a machine embodying a patent.   6. That the securing of letters patent in Canada involves the action of officers of a foreign government, and cannot be the subject of an order for specific performance.   7. That it does not appear by said bill what relief the plaintiff prays for, and the plaintiff's bill is entirely indefinite and uncertain."

*W. Allen*, J., sustained the demurrer; and the plaintiff appealed to the full court.

*C. S. Knowles*, for the defendant.

*W. B. Durant*, for the plaintiff.

DEVENS, J.    It is the contention of the defendant, that the plaintiff has a full, complete, and adequate remedy at common law by an action for damages, and that the court sitting in equity cannot grant the relief sought by the prayer of the bill.

The controversy arises from the failure to perform an executory written contract.    So far as this relates to personal property, the objections arising from the statute of frauds, which have sometimes been found to exist when oral contracts were sought to be enforced, have of course no application.    The general rule that contracts as to the purchase of personal property are not specifically enforced, as are those which relate to real property, does not rest on the ground of any distinction between the two classes of property other than that which arises from their character.

Contracts which relate to real property can necessarily be satisfied only by a conveyance of the particular estate or parcel contracted for, while those which relate to personal property are often fully satisfied by damages which enable the party injured to obtain elsewhere in the market property precisely similar to that which he had agreed to purchase.    The distinction between real and personal property is entirely subordinate to the question whether an adequate remedy can thus be afforded.    If, from the nature of the personal property, it cannot, a court of equity will entertain jurisdiction to enforce the contract.    Story Eq. Jur. § 717.    *Clark* v. *Flint*, 22 Pick. 231.    A contract for bank, railway, or other corporation stock freely sold in the market, might not be thus enforced, but it would be otherwise where the stock was limited in amount, held in a few hands, and not ordinarily to be obtained.    *White* v. *Schuyler*, 1 Abb. Pr. (N. S.) 300. *Treasurer* v. *Commercial Mining Co.* 23 Cal. 390.    *Poole* v. *Middleton*, 29 Beav. 646.    *Doloret* v. *Rothschild*, 1 Sim. & Stu. 590. See *Chaffee* v. *Middlesex Railroad*, 146 Mass. 224.

Where articles of personal property are also peculiar and individual in their character, or have an especial value on account of the associations connected with them, as pictures, curiosities,

family furniture, or heirlooms, specific performance of a contract in relation to them will be decreed. *Lloyd* v. *Loaring*, 6 Ves. 773. *Fells* v. *Read*, 3 Ves. Jr. 70. *Lowther* v. *Lowther*, 13 Ves. 95. *Williams* v. *Howard*, 3 Murphey, 74. An agreement to assign a patent will be specifically enforced. *Binney* v. *Annan*, 107 Mass. 94. Nor do we perceive any reason why an agreement to furnish articles which the vendor alone can supply, either because their manufacture is guarded by a patent or for any similar reason, should not also be thus enforced. *Hapgood* v. *Rosenstock*, 23 Fed. Rep. 86. As the value of a patent right cannot be ascertained by computation, so it is impossible with any approach to accuracy to ascertain how much a vendee would suffer from not being able to obtain such articles for use in his business.

The contract of the defendant was twofold, to furnish and deliver certain described working steam injectors within a specified time to the plaintiff, and also that, if the defendant shall make improvements in injectors for steam boilers, and shall take out patents therefor in the United States, he will apply for letters patent in Canada, and on obtaining them will assign and convey the same to the plaintiff, and that he will not do any act prejudicial to these letters patent of Canada or the monopoly thus secured.

It is said that the court will not enforce a contract for personal services when such services require the exercise of peculiar skill, intellectual ability, and judgment, and therefore that the defendant cannot be ordered to make and deliver the injectors contracted for. But the principle on which it is held that a court of equity cannot decree one to perform a personal service involving peculiar talent or skill, because it cannot so mould its order and so supervise the individual executing it that it can determine whether he has honestly obeyed it or not, has no application here.

The defendant has agreed to furnish and deliver certain injectors, which the contract shows to be patented articles. It does not appear from the bill that they were yet to be made when the contract was executed. But if it be assumed that they were, there is nothing from which it can be inferred that any skill peculiar to the defendant was required to construct them. For aught that appears, they could be made by any

intelligent artificer in the metals of which they are composed. The details of their manufacture are given by reference to the patents which are referred to in the agreement, so that no difficulty such as has sometimes been experienced could have been found in describing accurately, and even minutely, the articles to be furnished. Nor are there found in the case at bar any continuous duties to be done, or work to be performed, requiring any permanent supervision, which, as it could not be concluded within a definite and reasonable time, has sometimes been held an obstacle to the enforcement of a contract by the court.

Agreements to make an archway under a railway, or to construct a siding at a particular point for the convenience of the landowner, have been ordered to be specifically enforced. Although the party aggrieved might have obtained damages which would have been sufficient to have enabled him to pay for constructing them, and although the work to be done necessarily involved engineering skill as well as labor, he was not bound to assume the responsibility or the labor of doing that which the defendant had agreed to do. *Storer* v. *Great Western Railway*, 2 Yo. & Col. Ch. 48. *Greene* v. *West Cheshire Railway*, L. R. 13 Eq. 44. The case at bar is readily distinguishable from that of *Wollensak* v. *Briggs*, 20 Bradw. (Ill.) 50, on which the defendant much relies. In that case, the defendant was to construct for the plaintiff certain improved machinery for a particular purpose, but no details were given as to the form, structure, principle, or mode of operating the proposed machine. It was obviously a contract too indefinite to enable the court to order its specific enforcement.

It is urged that specific performance of a part only of a contract will not be ordered when it is not in the power of the court to order the enforcement of the whole, and that it would not be possible to enforce that portion of the contract which relates to the application for letters patent in Canada, and the subsequent assignment of them. But where two parts of a contract are distinctly separable, as in the case at bar, there is no reason why one should not be enforced specifically, and the plaintiff compensated in damages for the breach of the other.

When a contract relates to but a single subject, and it is impossible for the defendant to perform it, except partially, the

plaintiff is entitled to the benefit of such partial performance, and to compensation, if it be possible to compute what is just, so far as it is unperformed. It was therefore held in *Davis* v. *Parker*, 14 Allen, 94, that where one had agreed to convey land with release of dower, and was unable to procure a release of dower, the purchaser was entitled to a conveyance without such release, with an abatement from the purchase money of the value of the wife's interest at the time of the conveyance. See also *Milkman* v. *Ordway*, 106 Mass. 232, 253 ; *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90.

We have assumed, in favor of the defendant's contention, that the only relief that the plaintiff could obtain for the breach of that portion of the agreement which relates to the application for a patent in Canada, for the improvements which the defendant had made, would be in damages. We have not intended thus to decide. That equity, by virtue of its control over the persons before the court takes cognizance of many things which they may do or be able to do abroad, while they are themselves personally here, will not be controverted. One may be enjoined from prosecuting a suit abroad. He may be compelled to convey land situated abroad, although the conveyance must be according to the laws of the foreign country, and must be sent there for record. *Pingree* v. *Coffin*, 12 Gray, 288. *Dehon* v. *Foster*, 4 Allen, 545. *Cunningham* v. *Butler*, 142 Mass. 47. *Newton* v. *Bronson*, 13 N. Y. 587. *Bailey* v. *Ryder*, 10 N. Y. 363.

There is nothing to show that the defendant, in making his application in Canada for the patent, is compelled to leave the State, any more than he would be compelled to do so if he was an applicant at Washington. The grant of such a patent is an act of administration only. If it were to be granted here, the party would be ordered to make application. It was held in *Runstetler* v. *Atkinson*, MacArthur & Mackey, 382, that where a formal assignment of an invention had not been made, but a valid agreement had been made to assign, equity would order the party to make the formal assignment, and also to make application for the patent which, in such case, would issue to the assignee. . The laws of Canada, which we can know only as facts, are not before us by any allegations as to them. If all that is required by them is a formal application in writing by the

inventor, there would seem to be, from the allegations of the bill, sufficient reason why the defendant should be required to make and forward it, or place it in the hands of the plaintiff to be forwarded to the Canadian authorities.

In any event, as the application is preliminary only to obtaining letters patent for the purpose of assigning them to the plaintiff, the averments of the bill taken in connection with the terms of the agreement set forth a good reason why the plaintiff may ask an assignment of his title to the improvements in question from the defendant, so far as the Dominion of Canada is concerned, and also why the defendant should be restrained from alienating or in any way incumbering any right he may have to letters patent from Canada, if the plaintiff should decide to seek his remedy in this form, rather than in damages for breach of this part of the contract.          *Demurrer overruled.*