### JOHN et al. v. SMITH et al.

(Circuit Court of Appeals, Ninth Circuit. May 7, 1900.)

#### No. 571.

CHARITIES—VALIDITY OF CHARITABLE TRUST—CERTAINTY AS TO TRUSTEES AND BENEFICIARIES.

A testator devised and bequeathed all his property to his executors in trust to be used in establishing and maintaining free public schools in a certain town. The will provided that the personal property should be sold, and the proceeds, together with the rents from the real estate for 15 years, used in the erection of school buildings and the employment of teachers; that at the end of 15 years the realty should be sold, and the income from the proceeds devoted to school purposes in the same town. It also provided that at the end of the 15 years trustees should be appointed by the judge of the state circuit court and the judge of the United States district court in that district, who should have charge of the estate and the application of the income to the purposes specified. Held, that the trust created was not void for indefiniteness or uncertainty as to the plan for appointment of trustees, as in case of a failure of appointment in the manner provided a court of equity would appoint trustees to carry out the purposes of the testator, the trust being a charitable one, favored by the courts; nor was the validity of the trust affected by the failure to designate the beneficiaries any more definitely than to state that the schools to be established should be public, and at all times open to the children of the school district, which should embrace the town.

In Error to the Circuit Court of the United States for the District of Oregon.

Watson & Beekman and Nixon & Dolph (Nathan H. Frank, of counsel), for plaintiffs in error.

Catlin, Kollock & Catlin and Nicholas & Deady, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, delivered the opinion of the court.

The plaintiffs in error were the plaintiffs in an action of ejectment brought against the defendants in error to recover the possession of certain real estate situate in the town of St. Johns, in the state of Oregon. The defendant in error, as the executor of James John, deceased, answered, denying the plaintiffs' title and right of possession and setting up four distinct defenses: First, the statute of limitations; second, that he was in possession as such executor, and under the terms of the will of said James John, deceased; third, that the plaintiffs were estopped by the judgment of the county court of Multnomah county sitting in probate, dismissing the petition of the heirs of James John, deceased, by which they sought to vacate a prior order of said court probating the will, etc.; and, fourth, that said county court had decreed the sale of the particular property in controversy to pay expenses of administration, and that the same had been sold thereunder. A demurrer to the answer was overruled (91 Fed. 827), and the plaintiffs replied. Judgment was then rendered for the defendant upon his motion for a judgment on the pleadings. On the writ of error from this court it is now contended that the trial court erred in overruling the demurrer and in rendering the judgment.

The defense set forth in the answer concerning which the principal argument was had was the second,—that in which the defendant asserted his right of possession as the executor of the estate of James John, deceased. It alleged, in substance, that by the terms of his will James John devised and bequeathed all of his property and money to his executors for the following uses and trusts: First, to convert his personal property into cash, and to lease his real estate upon leases not to extend beyond 15 years from his death, and to expend all moneys from the sale of personal property or from rents of real estate, "in the erection of buildings for school purposes upon block No. 29, in the town of St. Johns, Multnomah county, state of Oregon, and in employing teachers to teach the common-school branches." Next, to sell all his real estate 15 years after his death, except said block No. 29, and such other lots as the executors might deem necessary for school buildings and grounds; and he then provided as follows:

"It is my desire that my estate shall be used in establishing and maintaining free schools or school in the town of St. Johns; and that such schools shall be public, and at all times open to children of the school district which shall embrace the town of St. Johns; and, if my executors shall consider it to the best interests of the children of said town and district, they may act in concert with the directors of said school district in erecting schoolhouses and maintaining schools; but any and all buildings erected with money belonging to my estate shall belong to my estate, and not to the district, and all moneys expended in maintaining schools shall be expended under the supervision of my executors, as long as they shall continue to act, and until the trustees hereinafter mentioned and provided for shall be appointed and qualify."

Then follows the appointment of three executors named, and this provision:

"It is my will that fifteen years after my death three trustees be appointed as follows: One by the judge of the circuit court of the state of Oregon in whose judicial district the town of St. Johns may be in; one by the person who shall be district judge of the United States in whose judicial district the

town of St. Johns may be; and the third shall be appointed by the two persons acting as such judges; and the three persons appointed as such trustees shall be and constitute a board of trustees, and such board shall have the possession, management, and control of all moneys and property by them received from my executors for the purpose of promoting educational interests in the town of St. Johns, and to that end shall use such money and property so as to establish a permanent fund, the interest only to be used in educational purposes, or so much thereof as shall be necessary. The principal to be loaned only on real estate security. A portion of the principal, which shall be in excess of fifty thousand dollars, in the discretion of such trustees, may be used in erecting buildings for educational purposes, and employing teachers. * * * It is my intention and desire to establish a permanent, perpetual, educational fund, to be forever used in promoting education. Whenever a vacancy shall occur in the board of trustees hereinbefore mentioned, such vacancy shall be filled by appointment to be made by the person occupying the position of judges as aforesaid. Said board to be always kept full, and to consist of three persons, a majority of whom may transact business."

The plaintiffs in error contend that the will of James John is so uncertain and indefinite that it is impossible to ascertain the intention of the testator. It is said that the will embodies two distinct and conflicting schemes,—the one to establish a free school or schools in the town of St. Johns for the benefit of the school district of that town, and to apply testator's personal property and rents of real estate for 15 years following his death, through the agency of his executors, in erecting school buildings and employing teachers, and the other to create a permanent fund from the sale of all his realty at the end of the 15 years to be controlled by a board of three trustees to be then appointed, and to be used in promoting educational interests in the town of St. Johns by the application of the interest of said fund thereto, giving authority to use a portion of the principal· over $50,000, in the discretion of the trustees, for the erection of buildings for educational purposes and employing teachers, but without restriction as to branches of education except that the doctrines of no one more than another religious sect are to be inculcated. It is said that it is impossible to determine whether the testator intended that these two schemes should ever unite. Other features of the will are referred to as presenting difficulties of construction. Upon a consideration of all the provisions of the will we find no such uncertainty as to interfere with its enforcement. It is evident that the testator intended that none of his heirs at law should receive any portion of his property, and that all his property should go, first, to his executors, and thereafter to trustees, to be used in promoting education and in establishing and maintaining free schools in the town of St. Johns, the schools to be public, and at all times open to the children of the school district of the town of St. Johns, giving to the executors power, if they should consider it to the best interests of the children of said school district, to act in concert with the directors of said school district in erecting school houses and maintaining schools. The whole disposition of the testator's property is made for a charitable purpose. Said the court in Ould v. Washington Hospital, 95 U. S. 303, 313, 24 L. Ed. 452: "Charitable uses are favorites with courts of equity. The construction of all instruments, where they are concerned, is liberal in their behalf." We think it may be fairly deduced from the will that there are not two

schemes involved therein, and that it was the intention of the testator to make a temporary disposition of his property by placing it in the hands of his executors for a term of 15 years, and thereafter to transfer the whole thereof to his trustees to carry out the general purposes expressed in his will. But if, indeed, there are two schemes, and certain of his property is to remain in the hands of the executors, the schemes are not necessarily inconsistent, nor will the purpose of the testator fail on that account. It is argued further that the trust is void for the reason that no trustee is named, and that the method prescribed for selecting a trustee is so uncertain and cumbersome as to be incapable of being carried out, since the power to appoint one trustee is vested in the district judge of the United States for the district in which the town of St. Johns may be, and the power to appoint another is vested in the judge of the circuit court of the state of Oregon for that district. It is said that there is no method to compel these judges to act in case they decline, that there are now four circuit judges of the circuit court of the state of Oregon for the county in which the town of St. Johns is situated, and there is no way to determine which of the four is to exercise the power of appointing a trustee, and that, as judges, the said officers have no capacity to accept said trust. This may all be true, and yet it does not follow that the trust must fail. The time has not arrived for the judges to exercise the powers conferred upon them by the will. We have no reason to doubt that, when that time comes, they will consent to carry out the intention of the testator. They will not be prevented from so doing by reason of their official duties. The fact that they may be disqualified from presiding at the trial of any litigation that may hereafter arise concerning the trust is of no moment, and presents no difficulty. But if, indeed, they should decline to accept the trust, and refuse to appoint the trustees, the purpose of the testator in making the charitable disposition of his property would not be thereby frustrated. There can be no doubt that in such an event a court of equity would raise up a trustee or trustees to effectuate the intention of the testator by exercising its ordinary jurisdiction to see that the trust should not fail for want of a trustee. Pom. Eq. Jur. § 1026.

The plaintiffs in error contend that it is impossible to carry out the intention of the testator without invoking the doctrine of cy-pres, —a doctrine which does not prevail in Oregon,—and that under the constitution and the statutes of Oregon there is no difference between ordinary trusts and trusts for charitable purposes. The supreme court of Oregon in at least two cases has ruled against this contention, and has recognized a clear distinction between charitable trusts and other trusts. In Raley v. Umatilla Co., 15 Or. 173, 13 Pac. 895, the court said:

"It is also urged by counsel for appellants with much apparent confidence that this trust is void because those who may be its beneficiaries are uncertain or unknown. But this does not belong to that class of trusts where it is necessary they should be known. It is the use to which the property is to be applied, and not the persons benefited, which the law regards in such case. In other words, it is a trust for charitable uses."

—And the court quoted from 2 Perry, Trusts, § 687, in which it was said:

"But, if a gift is made for a public charitable purpose, it is immaterial that the trustee is uncertain, or incapable of taking, or that the objects of the charity are uncertain or indefinite. Indeed, it is said that vagueness is in some respects essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recipient begins."

In Pennoyer v. Wadhams, 20 Or. 274, 25 Pac. 720, in construing a will in which the testator had devised a portion of his property to a church to be known as the "First Presbyterian Church of Upper Astoria," it was held that, as a charitable trust, it was valid against the testator's heirs, notwithstanding there was no Presbyterin church organization or society in Upper Astoria at the time of the testator's death. The court said:

"It is also claimed that the devise in this case is invalid because there was no cestui que trust in existence capable of taking at the time of the donor's death, nor is there now. In disposing of this question it is well to keep in view the fact that we have a living trustee, in whom the testator vested the property with specific direction as to its disposition. This is not a case where the bequest is for charity generally, or where there is no one in esse capable of taking at the time of the testator's death."

The case of Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450, is directly in point. In that case the testator devised certain lots to two trustees named to hold the same as a site for the erection of a hospital for foundlings to be built by any association that might thereafter be incorporated by an act of congress for that purpose, and upon such incorporation to convey the lots to the corporation, but giving the trustees power to withhold the grant until the creation of a corporation which should meet their approval. The court upheld the trust, and in the opinion said:

"The gift was immediate and absolute, and it is clear beyond doubt that the testator meant that no part of the property so given should ever go to his heirs at law, or be applied to any other object than that to which he had devoted it by the devise here in question."

Of similar import are the cases of Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327, 27 L. Ed. 397, and Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401. In the first case the testator had granted lands and personal property to a trustee named, and to his successors, in trust for the purpose of founding an institution for the education of youth in St. Louis county, Mo., for the use and benefit of the Russell Institute of St. Louis, Mo., giving his trustee direction to sell the lands, and pay the proceeds to Thomas Allen, president of the board of trustees of the said Russell Institute of St. Louis, Mo. It was held that this was a charitable gift, and that it was valid against the heirs of the donor, although the institution was never established nor incorporated in the donor's lifetime or the lifetime of Thomas Allen. In Jones v. Habersham the court held valid a will which contained several charitable devises. The beneficiaries of some of the bequests were indefinite; as, for instance, "to one or more Presbyterian or Congregational churches in the state of Georgia in such destitute and needy localities as the proper officers of said Independent Presbyterian Church may select, so as to promote the cause

of religion among the poor and feeble churches of the state." Another was "to the first Christian church erected or to be erected in the village of Telfairville in Burke county, or to such persons as may become trustees of the same." These were held to be good charitable bequests.

The plaintiffs in error cite and rely upon Association v. Hart, 4 Wheat. 1, 4 L. Ed. 499, Wheeler v. Smith, 9 How. 55, 13 L. Ed. 44, and Fontain v. Ravenel, 17 How. 369, 15 L. Ed. 80. In the first case it was held that a bequest of funds to the Baptist Association "that for ordinary meets at Philadelphia annually," to be used for the education of youths of that denomination who should appear promising for the ministry, was void, for the reason that the legislature of Virginia had in 1792 passed an act repealing all English statutes, and particularly that of 43 Eliz. c. 4, by virtue of which alone, in the opinion of the court, the English courts received their authority to sustain a charity such as that which was intended to be created by the bequest. That conclusion was subsequently shown to be erroneous by the publication of numerous cases in which it appeared that the English courts had upheld such charitable bequests before the enactment of the statute of 43 Eliz. This was subsequently admitted in Vidal v. Girard, 2 How. 196, 11 L. Ed. 205, by Mr. Justice Story, who had concurred in the opinion in Association v. Hart. In Russell v. Allen, 107 U. S. 167, 2 Sup. Ct. 331, 27 L. Ed. 399, referring to the reasoning on which the decision in Association v. Hart was based, the court said:

"That theory has since, upon a more thorough examination of the precedents, been clearly shown to be erroneous;" and the court proceeded to remark: "And the only cases in which this court has followed the decision in Association v. Hart have, like it, arisen in the state of Virginia, by the decisions of whose highest court charities, except in certain cases specified by statute, are not upheld to any greater extent than other trusts."

One of the cases referred to in the language so quoted was Wheeler v. Smith, a case in which decision was controlled wholly by the rule established by the courts of Virginia. The decision in that case is no authority for the construction of a bequest made in Oregon, where, as we have seen, the rule established by the supreme court of the state is the reverse of that of Virginia. In Fontain v. Ravenel the testator empowered his executors after the death of his wife to distribute the residue of his estate "for the use of such charitable institutions in Pennsylvania and South Carolina as they might deem most beneficial to mankind." The executors died before the death of the testator's wife. It was held that a court of equity had not the power to carry out the intention of the testator, nor to take the residue of the estate from the next of kin. The court said:

"The testator was unwilling to give this discretion to select the objects of his bounty except to his executors. * * * They died before they had the power to appoint, and now what remains of this bequest on which a court of chancery can act?"

The opinion admits that the bequest would have been executed in England, not as a judicial function of the court of chancery, but under the cy-pres power which the chancellor exercises as the representa-

tive of the sovereign,. and by virtue of the king's prerogative as parens patriæ. This power, it was said, did not belong to courts of equity in the United States, in the absence of a statute conferring it. The decision has no perceptible bearing upon the question involved in the case at bar. There is in this case no necessity to invoke the doctrine of cy-pres. The nature of the uses to which the testator's property is to be devoted is, in our opinion, made sufficiently distinct and clear by the terms of the will.

As the defense so pleaded to the complaint was sufficient in itself to justify the ruling of the circuit court, we find it unnecessary to consider the other defenses which were included in the answer. The judgment is affirmed.