TINCHER v. ARNOLD et al.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906.)

No. 1,210.

1. WILLS—ACTIONS TO CONSTRUE—LACHES.

Mere delay will not debar an heir from maintaining a suit to determine the validity of a legacy where such legacy has remained in the hands of trustees in accordance with the terms of the will.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1677.]

2. PERPETUITIES—GIFT TO CHARITABLE USE—REMOTENESS.

A bequest of all the testator's residuary estate to trustees to accumulate until it reaches a certain amount, a part of the principal and the future income from the remainder to be then devoted to a certain charity, vests for the use of the charity at once, and is not void, as in violation of the rule against perpetuities, nor for remoteness.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Perpetuities, §§ 57–67.]

3. CHARITIES—VALIDITY OF EDUCATIONAL BEQUEST—CERTAINTY AS TO BENEFICIARIES.

A bequest in trust to create a fund to be used to establish and maintain a school "for the purpose of educating boys who reside in the state of Illinois between the ages of 12 and 18 years, and who are unable to educate themselves," is not void for want of a class of boys to which the charity may apply, because of the existence in the state of a system of public free schools open to all boys of such age without charge, nor because of uncertainty as to the individual beneficiaries; such uncertainty being in fact an essential element of a valid charity.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Charities, §§ 36, 48.]

4. SAME—ADMINISTRATION—SELECTION OF BENEFICIARIES.

Where a will appointed trustees to manage the estate, and "for the purpose of carrying out the full terms" of the will, and contained a bequest to them in trust to found and maintain a school for the education of boys "who reside in the state of Illinois between the ages of 12 and 18 years, and who are unable to educate themselves," the trustees have power to select the individual beneficiaries, and, in any event, if necessary, a court of chancery of the state may appoint a trustee for that purpose.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Charities, §§ 42, 75, 76.]

5. SAME—CONSTRUCTION AND EXECUTION OF TRUST—DOCTRINE OF CY PRES.

A testator devised and bequeathed his residuary estate in trust, directing the trustees to manage the property, and when a fund of a stated amount had been accumulated to cause a building to be erected, to cost not exceeding a certain sum "for the purpose of educating boys who reside in the state of Illinois, between the ages of 12 and 18 years, and who

are unable to educate themselves," and directing that the remainder of the fund should be kept at interest, and the net income used "for the purpose of paying teachers employed in said school." *Held*, that education was the dominant purpose of the charity, as disclosed by the will, and that the courts should not defeat it by a literal construction which would restrict the use of the income to the payment of teachers, and prevent the use of any part of it to equip and maintain the building and to pay other necessary expenses of conducting the school, but should construe the will and carry out the testator's general purpose in accordance with the equitable doctrine of cy pres.

6. WILLS—SUIT TO DETERMINE VALIDITY OF BEQUEST—FEES AND COSTS.

The sole heir at law of a testator, who brings an unsuccessful suit to have a bequest in trust for a charitable purpose declared void, solely in his own interest, is not entitled to have his costs and attorney's fees charged against the trust estate.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, §§ 1684–1686.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

E. A. Otis and J. Warren Pease, for appellant.
Edwin Burritt Smith and McClellan Kay, for appellees.

Before GROSSCUP and BAKER, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge. Action to construe a will, to determine the validity of a trust clause therein, to have such clause held void, determine that complainant as sole heir at law of the testator is entitled to the amount of the trust funds in the hands of the trustees, and that they be required to account for the same and turn them over to complainant. The court below held that the trust was valid, as creating a good charitable use, and dismissed the bill for want of equity. Complainant also moved the court to allow her the amount paid for attorney's fees, on the ground that her solicitors had rendered valuable and important services to the value of $1,500, and that the terms of the will are ambiguous, indefinite, and uncertain, and application to the court was necessary to obtain a construction thereof; that at the time of the filing of the bill in this cause the trustees under the will had themselves prepared a bill to be filed in the Circuit Court of Watseka county, Ill., asking a construction of the will. This petition was denied by the court, on the ground that complainant in this case was suing in her own right, and not for the benefit of the trust estate. Complainant has appealed from the decree dismissing the bill, and from the order or decree denying her petition for attorney's fees.

Complainant is the daughter and sole heir at law of the testator, LeGrand L. Wells, deceased. On September 24, 1883, said Wells made his will, and by the fifth clause thereof attempted to create a trust, as follows: After giving his daughter, the complainant, a life estate in a farm in Iroquois county, Ill., remainder to the heirs of her body share and share alike, and a legacy of $1,000 and certain personal property, and $1,000 each to her children as they should arrive at the age of 21 years, the will contains a residuary devise to his trustees for the

purpose of carrying out the full terms of the will, and then proceeds as follows:

"I further direct that my trustees and their successors manage my estate until it has accumulated a fund of at least thirty thousand dollars after setting aside a sufficient sum to pay all specific legacies, debts etc, which shall form a fund known as the Wells Fund, and shall be used in the following manner, to wit: If the city of Watseka will donate a suitable lot for such purpose within thirty days after being notified by said trustees, said trustees shall cause a building to be erected on said lot for the purpose of educating boys who reside in the state of Illinois between the ages of 12 and 18 years, and who are unable to educate themselves, which shall cost not exceeding five thousand dollars, and the balance of my estate in the hands of my said trustees after the payment for said building, shall be kept at interest and the net income, except ten dollars per year set apart for the purpose of keeping my family burial lot in repairs, shall be used for the purpose of paying teachers employed in said school. And I further direct my said trustees that in case the city of Watseka refuses or neglects for thirty days after being notified by the trustees that they are ready to carry out this provision in said Will as to said school, then they shall pay the whole sum set apart for this purpose over to the finance committee or the trustees of Onarga Seminary, located at Onarga, Illinois, the net income of which shall be used to carry on said Seminary and shall be known as the Wells Fund."

The specific legacies were paid by his executors, but the estate has never been settled in the county court of Iroquois county, nor the executors discharged. The executors and trustees continued to manage and invest the residuary estate until about the year 1890, when the trust fund amounted to $30,000. Soon after a lot of land in Watseka was conveyed by the owners thereof to the trustees as a site for the erection of the school building pursuant to the terms of the will, but there was no donation of the lot by the city which it is alleged in the bill did not have any power or authority to purchase the lot or make any donation thereof. The will was admitted to probate May 7, 1884. The original bill was filed May 14, 1903, and the amended bill July 21, 1903.

The bill further set up that about the year 1898 the trustees erected on the lot so conveyed to them a building to be occupied as a school for the purpose of educating boys of the class mentioned in the fifth clause of the will, expending therein $5,000, and although the building was so erected and completed in 1898 no steps had been taken by the city, or any one, to put in operation a school for the purpose mentioned; that before any school can be put in operation in the building it is absolutely necessary and indispensable to furnish the necessary fixtures, furniture, apparatus, libraries, fuel and janitor's services; that the school building must be properly cared for and suitable persons employed and paid to keep the building, fixtures and appurtenances in reasonable condition and repair; that the building should be insured, and the taxes and assessments thereon paid, all of which would require the annual expenditure of a large sum of money over and above the salary of teachers employed therein, and that the city has no power or authority to discharge or perform these indispensable duties for the operation of a school of the character mentioned, and the trustees are absolutely without power to pay these expenses; with the result that no one is authorized or able to give the building any care or attention whatever, and that it has remained vacant and unoccupied ever since its construc-

tion. Its windows and doors have been boarded up and the same is becoming in a ruinous condition from lack of care and attention, no arrangements having been made or contemplated by any of the defendants, or otherwise, to maintain any school or carry into practical execution the provisions of the will; that the net income of the trust will not exceed $1,000 to $1,250 a year, and that sum is wholly insufficient and inadequate to pay the salaries of teachers in said school even if the other expenses mentioned were otherwise provided for, and the carrying on of such a school will require annually the expenditure of many times the amount of such net income; that pursuant to the mandate of the Constitution of Illinois there was at the time of the death of the testator a complete system of free public schools in force in Illinois, whereby all boys of the ages mentioned in the will could and can be educated without charge, and there are no boys in Illinois who are unable to educate themselves, and no class of persons to which the fifth clause of the will applies. The city has no power to levy any tax to support or maintain such a school, and the trust provision of the will is uncertain, illegal, indefinite and incapable of being carried into execution.

It is further alleged in the bill that the defendant Grand Prairie Seminary (successor to Onarga Seminary), is a school conducted for profit, is not a charity under the laws of Illinois, and the trust provision of the will is void as against said Grand Prairie Seminary, if otherwise valid, because it creates a perpetuity; and that it is impossible to ascertain and determine what school or seminary should receive the benefit of the trust in case no site for the erection of the building had been supplied by the city of Watseka.

It is further averred that the Grand Prairie Seminary, claiming to be the school referred to in the will, filed a bill in the circuit court of Iroquois county, claiming the legacy in its own behalf, and that neither the complainant nor the city of Watseka was a party to that bill or concluded by the same in any way. That suit proceeded to final hearing and decision in the Supreme Court of Illinois, wherein it was finally determined that Grand Prairie Seminary was not entitled to said fund. A final decree was made in that suit in the circuit court, June 30, 1896, declaring the trust illegal and void, and a final decision sustaining the trust was made by the Supreme Court of Illinois on February 14, 1898. 171 Ill. 444, 49 N. E. 516. Grand Prairie Seminary answered the bill in this case. The trustees, the city of Watseka and the Attorney General demurred to the bill for want of equity, and also on the ground of gross laches and estoppel by election. The court sustained the demurrers, and entered a decree dismissing the original and amended bills for want of equity, reserving the question of costs on the pending motion. An order or decree was afterwards entered, denying the motion, and appeals taken from both decrees.

As tending to explain the delay in filing the bill, complainant stated in the amended bill that about a year and a half after the death of her father she removed to Nebraska. She was advised by the executors to believe that several years would elapse before the residuary fund in their hands as trustees would amount to $30,000, and that there was no necessity for her to assert any claim thereto, because the trust es-

tate was required to remain in their custody. She was in limited circumstances, and unable to pay the expenses of instituting the proceedings to obtain a construction of the will, and, having entire confidence in the integrity, honesty, and responsibility of the trustees, she was induced to delay proceedings. In 1895 she first ascertained that steps were being taken by the Grand Prairie Seminary to obtain a construction of the will, and during the pendency of that suit, and for a long time thereafter, she was informed and fully believed that the final decision in that case would settle and determine the rights of all the parties to the trust fund, and she did not learn otherwise until a short time before beginning this suit. She further submits that no injury has resulted to any of the parties claiming the trust fund by reason of her omission to commence suit earlier, and that the ultimate rights of the parties to the trust fund remain substantially unchanged. Upon the argument the court disposed of the question of laches through the following expression by Judge Baker, in which we all concurred: The legacy is either void or valid. This is to be determined by the will. If valid, the delay is of no consequence; if void, the laches of appellant could not make it valid. In no event could it become the individual property of the trustees. That the bequest does not offend against the rule of perpetuities, because of perpetuity in the first taker, and is not void for remoteness, is equally clear; and is settled by the cases of Crerar v. Williams, 145 Ill. 625, 34 N. E. 467, 21 L. R. A. 454, and Ingraham v. Ingraham, 169 Ill. 432, 48 N. E. 561, 49 N. E. 320. See, also, Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327, 27 L. Ed. 397.

The only difficult question presented is that of definiteness and possibility of execution. The testator gave to his executors, to be held by them as trustees for the purpose of carrying out the full terms of the will, all his residuary estate. They are directed to manage the property until it has reached at least $30,000, when it is to form a fund to be known as the "Wells Fund," to be used in the following manner: If the city of Watseka will donate a suitable lot within 30 day after notice by the trustees, said trustees shall cause a building to be erected on said lot for the purpose of educating boys who shall reside in Illinois between the ages of 12 and 18, and who are unable to educate themselves, to cost not exceeding $5,000; the balance to be kept at interest and the net income (except $10 a year set apart to keep the family burial lot in repair) shall be used for the purpose of paying teachers employed in the school.

Several important questions are presented. As the Illinois public school system affords a free education to boys of the ages mentioned, it is urged: First, that there were not, and are not now, any boys in Illinois unable to educate themselves; second, if such a class is decided to exist, its members are said to be indefinite, and no means of selection provided, the trustees not being empowered to select them; and, third, that the will imperatively requires all income to be used for teachers' wages, leaving nothing for other things absolutely essential, such as heating, lighting, care of the schoolhouse, repairs, taxes, and board and clothing of the boys. Wherefore the scheme is alleged to be indefinite, impracticable, illusory and void.

1. Is there a class of boys to which the charity may apply, notwithstanding the public school system? Such system existed when the will was made, and when it became operative; and the testator was fully aware of its operation, scope, and limitations. Perceiving this he well understood that there are many boys who are still unable to avail themselves of its great advantages; whether by reason of indifference of parents, poverty, and consequent necessity of earning their own living, or otherwise. It is said the class is not restricted in any way, by the capacity, color, or condition of the beneficiaries; but it is enough to say that charity delights in uncertainty. "Charity begins where certainty in the beneficiaries ends." In fact such a certainty will avoid the trust. "It is the number and uncertainty of the objects, and not the mode of relieving them, which is the essential element of a charity." Dodge v. Williams, 46 Wis. 97, 50 N. W. 1107. Trusts for charitable purposes "may, and indeed must be, for the benefit of an indefinite number of persons; for if all the benficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal certainty." Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327, 27 L. Ed. 397. The very indefiniteness complained of is the best means of making the charity effective and beneficial, since those boys to whom the school may be of real and substantial good may be selected from the large class indicated. "The rule that, to raise a valid trust there must be sufficient words, a definite subject, and a certain object, has its exception in charitable uses, of which uncertainty and indefiniteness of object are characteristic." In re Daly's Estate, 208 Pa. 58, 57 Atl. 180. In People v. Cogswell, 113 Cal. 129, 45 Pac. 270, 35 L. R. A. 269, a trust was created for the erection and maintenance of a polytechnical college for the purpose of giving the boys and girls of the state of California a practical training in the mechanical arts and industries, the better to fit them to engage in the different pursuits of life. It was urged that the trust was void for uncertainty in the recipients, the trustees not being authorized to designate what boys and girls, and, if all applied, the trust would be impossible of execution. It was held that, when the class has been fixed, this very vagueness and uncertainty as to individuals and numbers are not only permitted, but are absolutely essential elements, in the creation of a valid charitable trust.

But it is also objected, as all children may obtain a free education in the public schools, there are no boys in Illinois unable to educate themselves. It is well known, notwithstanding the public schools are free to all, there is still a class of boys who are unable to attend them; among whom are orphans, the poor who need public assistance, and those obliged to labor during school hours. Such an objection has never been sustained by the courts, so far as we have been able to find; on the contrary, similar charities have been sustained in a number of cases. A trust for the education of the children of the state of Kentucky, particularly the poor and most unintelligent, was sustained in Bedford v. Bedford's Adm'r (Ky.) 35 S. W. 926; Handley v. Palmer, 103 Fed. 39, 43 C. C. A. 100. Also a trust for a home and place for the maintenance and education of poor children, in Howe v. Wilson,

91 Mo. 45, 3 S. W. 390, 60 Am. Rep. 226. For the education of the poor or orphan children of a township. Mason's Ex'rs v. M. E. Church, 27 N. J. Eq. 47; State v. Smith, 16 Lea (Tenn.) 664. To establish an institution for the benefit, tuition, etc., of the youth residing from time to time in New Jersey. Stevens v. Shippen, 28 N. J. Eq. 487. For the support of a school for white children. Cincinnati v. Mecken, 6 Ohio Cir. Ct. Rep. 188. For the education and tuition of worthy indigent females. Dodge v. Williams, 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103. See, also, Green v. Blackwell (N. J. Ch.) 35 Atl. 375; In re John's Will (Or.) 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242.

In Clement v. Hyde, 50 Vt. 716, 28 Am. Rep. 522, a trust for the education of "the scholars of the poor people" of a certain county was sustained, although the public schools were also open to them. The court say:

"The public schools being open to the scholars of the poor as well as of the rich, and being supported by taxation, it is manifest that the testator did not intend to have his bounty so applied as to relieve the taxpayers in any measure of the burden of the support of these schools. Neither did he intend to have it applied to all of the children of the poor people of the county indiscriminately; for he has designated a definite class of such children—the scholars, not necessarily those attending schools, but those children of this class who have an aptitude for learning, and who could not avail themselves, for the want of a suitable education, of the powers that the Creator has bestowed upon them, without extrinsic aid. If the trustee had applied the income arising from the trust fund in good faith, and in the exercise of ordinary discretion, in the purchase of books, payment of tuition or board of any of the class of scholars indicated, no one, we think, would doubt about his accomplishing the intention of the testator. If the trustee hesitates to take the exercise of this discretion upon him, it is clearly the province of the court of chancery to aid him by devising a scheme for the appropriation of the income of the fund. Where a trust is created for a charitable use, the application will be effected by means of a scheme, to be directed and approved of by the court of chancery."

Leeds v. Shaw's Adm'r, 82 Ky. 79, was a trust to a school district, "for the education of poor children, or for the maintenance of a good common school in said district." It was held that the beneficiaries were children residing within the district, and who were by law entitled to the benefits of the common school system of the state; and that the bequest was confined to white children, because there was then no law for the participation of colored children in the benefits of the common school system; and the same result was reached in Moore's Heirs v. Moore's Devisees, 4 Dana (Ky.) 354, 29 Am. Dec. 417, where there was a trust for educating "some poor orphans" of a particular county, "and to be confined to such as are not able to educate themselves."

2. But who is to select the limited number to be brought into the school under the small provision made, not exceeding $1,500 a year? The rule stated by Mr. Perry is relied on:

"The courts in America have generally declined * * * to administer these indefinite gifts to charity or religion or education or public utility unless there was a trustee appointed by the testator to exercise his discretion in applying the gift to particular objects or persons."

Here there are trustees, but it is insisted that they have no power to select the charitable donees. The will appoints the trustees "for the

purpose of carrying out the full terms" of the will, and directs that they shall manage the estate. In Grand Prairie Seminary v. Morgan, 171 Ill. 444, 49 N. E. 516, involving this same will, the Supreme Court of Illinois held that these provisions were intended to provide for trustees to control the disposition of the fund; but that, in any event, a court of chancery might appoint a trustee for that purpose. In Guilfoil v. Arthur, 158 Ill. 600, 41 N. E. 1009, a trust was created for the benefit of "widows and home and school for orphans of deceased members of the Brotherhood of Locomotive Engineers," the property to be held under such rules and regulations as should be provided by the brotherhood. It was held that the trustee and the brotherhood had power to determine with certainty the beneficiaries. We think the will intends the trustees to manage the estate after the building should be built; and that this objection is not well taken. In any event a trustee may if necessary be appointed by the proper state court, to select the beneficiaries.

3. The most serious question, however, is whether the express direction of the will that all the income shall be used to pay the teachers must be literally executed, even though it may render the scheme abortive. Would it be a breach of trust to devote part of the income to pay for heating and other necessary expenses, or to the boys' support, so as to enable those selected to receive tuition? Or may education be regarded as the leading or dominant purpose of the charity, and effect be given to it by such a variation of the scheme as to make it practical and successful? The testator mentions the schoolhouse, the school, education and teachers; thus making education his general object and purpose. He does not expressly refer to such things as are absolutely essential to such purpose, such as heat, light, care, repairs, etc.; essential because there can be no continuous use of the building without repairs and care, no school without heat and light; possibly no teachers or students without some pecuniary help to the latter.

After reasonable provision for his only heir and her children, the testator wished to devote the rest of his property to a charity. In this he was dictated less by policy than benevolence; and it was not as an expiation, for his property did not come from public spoliation. No need to examine with a microscope the gift to ascertain whether it bears any taint of unlawful gain, or selfishness, or personal or family interest; for from all these it is absolutely free. His benevolent and philanthropic purpose was to reach an unfortunate class of boys, and bring their hearts and minds under the benign influence of education. This he endeavored to bring about by appealing to the natural rivalry between adjoining communities; thus shrewdly adopting the very best means to secure the school in his own home city. True, he also wished to perpetuate his name by calling the gift the "Wells Fund;" but this may be pardoned, and even be called laudable. Evidently he thought that "a boy is better unborn than untaught"; perhaps influenced by something he had himself missed, and valued accordingly. His dominant purpose is thus, not only worthy and laudable, but clearly outlined, lacking only in perfection of detail; and is to be construed with the greatest liberality. Hunt v. Fowler, 121 Ill. 269, 12 N. E. 331,

17 N. E. 491; Ould v. Washington Hospital, 95 U. S. 303, 313, 24 L. Ed. 452. So construed, will a court of equity permit his charity to fail because he has not fully worked out the details of his plan? Or because, in practice, it is somewhat inconsistent? The whole income cannot be applied, as literally directed, to teachers' wages, since there can be no teaching without other things. To earn wages, or have education, or carry on the designated school, or make it in any degree successful, or even tolerable, there must be heat, and light, and paid labor. To mention education, a school, a building, and teachers, is to impliedly mention those things essential to their success, if not to their very existence. A literal, ironbound construction makes the plan impossible, and defeats it. A liberal one saves it, through a mere change of detail, and thus gives effect to the testator's worthy purpose. "Qui haeret in litera, haeret in cortice."

A limited application of the equitable rule of cy pres, or the so-called "doctrine of approximation," is relied on for permitting a change of plan, by which the income, restricted by the will to teachers' wages, may be partly applied to other expenses necessarily preceding them. This is on the theory that the testator's main purpose was education, and that he could not have intended to so limit and hamper the use of the money as to defeat the very object designed. This dominant purpose to found a school and furnish the means of education being clear, imperfect or impossible details of method may be corrected, so long as the main object—education—is secured and preserved. Such correction of detail has often been adopted by the courts, and nowhere with more liberality than in Illinois. Instance the cases hereafter referred to of the John Crerar will, where the impossible direction to form a corporation was disregarded; and the school district trust in Heuser v. Harris, where an incongruous direction as to the method of electing a trustee was also disregarded. An impossible or even unlawful plan may be corrected, in order to carry out the main trust purpose. Any other course would sometimes defeat the very purpose of the trust, disappoint just expectations, and destroy gifts of great public importance and utility. While some courts have entirely rejected the rule of cy pres, and it has sometimes been characterized, like the evidentiary rule of res gestæ, as a cloak for loose reasoning, and as a means of interpretation which finds a meaning where none exists; yet its judicial application has usually been most just, enlightened, and beneficial. Where a main charitable purpose is disclosed with reasonable clearness, directions of the donor relating to management of the trust, not intended as limitations, will be regarded as directory only, and not mandatory, if necessary to preserve the trust, and carry out its leading purpose. In such cases, it will be presumed that specified details of management were meant to be governed by circumstances; and this whether they be either impracticable or illegal. Administrative duties may be varied, details changed, and the main purpose carried out cy pres, or as nearly as possible according to the plan prescribed by the trust instrument. A further application of the cy pres rule sometimes takes place when the object itself fails; as a charity to emancipate

slaves, made inoperative by their complete freedom; but it is not necessary to consider that aspect of the doctrine here.

The following cases illustrate the rule stated: When a definite charity is created, the failure of the particular mode by which its dominant purpose is to be effected will not defeat the charity, for equity will substitute another mode. Thus where the testator provided that the trustee should not make any sale or other or different alienation from a certain one indicated, but did not so phrase such provision as to make it a condition, but merely an administrative limitation in respect to the management of the trust, it was taken to have been intended to advance the dominant purpose of the will, or the maintenance of the charity; and an alienation to further such purpose was permitted. The court said that it was clear that this involved no phase of what is known as the prerogative power of cy pres, nor was it an instance which called for the exercise of the usual judicial power of cy pres. Lackland v. Walker, 151 Mo. 210, 52 S. W. 414. It was also said by the court in the same case, that this change of mode was not a deviation from the founder's intention as to the objects of the charity, but only from his directions as to management, varying only administrative duties, which were, no doubt, originally meant to be governed by circumstances. The difference was akin to that between the substance and its incidents, on the one hand, and form, or the rules of administrative detail, on the other; or the difference between the end in view and the means of its accomplishment.

In McDonogh v. Murdoch, 15 How. (U. S.) 367, 14 L. Ed. 732, cited in Russell v. Allen, supra, a charitable trust was sustained, and it was held that the testator's directions as to the management of the income "must be regarded as subsidiary to the general objects of his will, and whether legal and practicable or otherwise, can exert no influence over the question of its validity." "Assuming that the whole scheme of management should fail the charitable use will not be permitted to fail." In re Daly's Estate, 208 Pa. 58, 57 Atl. 180.

In Amory v. Attorney General, 179 Mass. 89, 60 N. E. 391, there was a trust to create a home for poor women and their young children, for a temporary home for invalid women, both young and old, and for the poor, sick, and weary, of any denomination. The home was to be administered by a sisterhood, and if it should not accept, the property was to be conveyed to a hospital for the same purposes. Both the sisterhood and the hospital refused the gift; and the master reported that the scheme could not be carried out as described in the will. It was also provided by the will that the trustees should not sell certain real estate known as "Seven Oaks." It was held that the fact that the scheme could not be carried out as prescribed was not fatal to the charity, but that it should be carried out as nearly as possible under the sanction of the court. Also, that "Seven Oaks" might be sold, especially as its sale was authorized by a codicil to the will. See, also, Stuart v. City of Easton, 74 Fed. 854, 21 C. C. A. 146, 39 U. S. App. 238, citing In re Mercer Home, 162 Pa. 232, 29 Atl. 731, as to change of plan. John v. Smith, 102 Fed. 218, 42 C. C. A. 275.

When a definite function or duty is to be performed, and it cannot be done in exact conformity to the scheme of the donor, it must be performed with as close an approximation to that scheme as reasonably practicable, and thus enforced. It is the doctrine of approximation. It is not confined to the administration of charities, but is equally applicable to all devises and contracts wherein the future is provided for; and it is an essential element of equity jurisprudence. Philadelphia v. Girard's Heirs, 45 Pa. 9, 28, 84 Am. Dec. 470. The doctrine of cy pres, in its last analysis, is found to be a simple rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor. Doyle v. Whalen, 87 Me. 414, 32 Atl. 1022, 1026, 31 L. R. A. 118; Taylor v. Keep, 2 Ill. App. 368, 383.

In Wisconsin the Supreme Court has quite recently adopted a more liberal rule as to charitable trusts of personal property than that formerly prevailing, and the Legislature has followed by recognizing the validity of charitable trusts of real estate. See chapter 511, p. 950, Laws 1905, amending section 2039, Rev. St. 1898; Rev. St. Supp. p. 1057.

In Kronshage v. Varrell, 120 Wis. 161, 97 N. W. 928, a testator, after reciting that "having in mind the many catastrophes resulting from the action of the elements, and the great suffering, distress, famine, and want caused by the destruction of life and property by storms, floods, fires, and other accidental and natural causes, and, having a desire to do what I can to relieve the same," made a bequest to trustees to annually expend certain income for the purpose of relieving the wants, distress, and suffering arising from such causes, and for the purpose of aiding the victims of such accidents and catastrophes. No restriction was placed upon the trustees as to the locality where the moneys should be expended, but the will enjoined upon them to select subjects worthy of assistance, and to use their best judgment and prudence in so handling the moneys that they might be of the greatest possible assistance to suffering humanity. It was held that the bequest was not to charity generally, but defined a class of beneficiaries with such definiteness as would enable the court to determine whether any concrete expenditure was within the scheme of the testator. The court say:

"The degree of definiteness essential to the validity of any grant in trust for charity is a subject so recently treated at large, and as to which our attitude is so unambiguously declared in Harrington v. Pier, 105 Wis. 485, 82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924, that we cannot justify extended review of either its history or of the writings of authors or judges upon it generally. This court has decided, disregarding the reasons which some others have deemed controlling, that there are inherent in our courts all the strictly judicial powers ever exercised by the Chancellor or the High Court of Chancery of England to find means to carry into effect a charitable purpose entertained by a testator or grantor; that such courts lack only the prerogative cy pres power enjoyed by the sovereign to apply all goods devised to any charitable purpose, to purposes never declared or even entertained by the donor, under certain circumstances, which prerogative power was in some degree exercised by the Chancellor by delegation from the sovereign. All that is necessary is that the devisor shall place his property in trust, and designate a charitable purpose of his own narrower than the field of charity generally. The courts can find and will then see to it that a trustee is provided, if none be designated, and that means will be found to apply the property to the purpose, if no method be prescribed. They are limited to the defined pur-

pose, and they must ascertain it from the words of the testator, but, in ascertaining it, may and will indulge the most liberal construction. In re Donges' Estate, 103 Wis. 497, 79 N. W. 786, 74 Am. St. Rep. 885."

In Harrington v. Pier, 105 Wis. 485, 82 N. W. 345, 50 L. R. A. 307, 76 Am. St. Rep. 924, a will gave three-fourths of the net residuary personal estate to trustees to expend in temperance work in the city of Milwaukee. The trust was sustained, the court laying down the following rules: The common-law system of trusts for charitable uses did not originate with, nor is it dependent upon, the statute of 43 Eliz. ch. 4. A trust for a particular and valid charitable purpose, as distinguished from a bequest in trust for charity generally, was sustainable in chancery before the statute of Elizabeth solely by the judicial power of the court, and to that extent such statute was merely confirmatory of the common law; and to the same extent such statute was adopted as a part of the common law of this country and prevails in this state.

In sustaining a trust of the character last above indicated, courts of equity resort to liberal rules of construction to determine the intent of the donor, enabling them to go to the limit of the general purpose indicated by the donor and do everything necessary to enforce such purpose, but not to go outside of it into the realms of prerogative authority governed by the cy pres doctrine strictly so called. The cy pres doctrine, as indicative of prerogative authority, does not prevail in this state, but, as regards liberal rules of construction of charitable trusts, applied in chancery in England independent of the statute of Elizabeth, it does prevail.

Cy pres power, as commonly understood, has two features: One, the right to exercise prerogative authority, enabling a court to deal with a bequest to a charitable use having no designated particular purpose as a bequest to charity generally, treating the purpose as the legatee, or a bequest for an illegal purpose, or some purpose impossible of execution for some reason; and the other, the right, by liberal rules of construction, to deal with a trust having a designated particular purpose, though in general terms, and enforce it within the limits of such purpose, supplying the trustee if necessary. The former is not exercised here, but the latter is. Similar definition and application of this "doctrine of approximation" have been uniformly made by the Supreme Court of Illinois. In Heuser v. Harris, 42 Ill. 425, lands were directed to be sold, and one-half the proceeds was to go to a certain school district, to be used for school purposes only, and to be under the control of one trustee, to be elected by "the people" of the district for the term of four years. The other half was to go to the poor of Madison county. It was objected that the scheme was utterly impracticable, because the will provided no lawful method for the election of the trustee. It was held, that if the trustee should not be elected, the district could apply to chancery to supply one; and the court would, in order to carry out the intent of the testator, by liberal intendment, appoint. "We entertain no doubt," say the court, "if the election of a trustee and his qualification are impracticable, a court of chancery, on a proper application, would remodel the will in this regard, cy pres, as near as possible to effectuate the intention of the testator."

In Crerar v. Williams, 145 Ill. 625, 34 N. E. 467, 21 L. R. A. 454, there was a trust for the erection, creation, maintenance, and endowment of a free public library; and providing for a corporation to carry out the trust. It was objected that the corporation could not be legally organized. Held that, whether this was so or not, the gift was valid; that even though the provisions for putting the library into practical operation might be held impossible of execution, the court would consider the charity as the substance, and if the designated mode failed, would provide another by which it might take effect. The same conclusion is reached in Andrews v. Andrews, 110 Ill. 223, Hunt v. Fowler, 121 Ill. 276, 12 N. E. 331, 17 N. E. 491, and Grand Prairie Seminary v. Morgan, 171 Ill. 444, 49 N. E. 516. Such being the rule in Illinois the federal courts will follow it, as a rule of property. Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 403; Bucher v. Cheshire R. Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795. We also think the same result would follow from an application of the liberal rules of construction adopted by the Supreme Court of the United States, and many of the states, appearing from the foregoing citations.

On the appeal from the decree denying the appellant costs out of the estate, we adopt the conclusions of the Circuit Court which follow:

"When the terms of a will are so ambiguous that resort to a court of equity is necessary to obtain a construction of the said will it may be proper for the court to order the costs of the parties to the proceeding, together with reasonable solicitor's fees, to be paid out of the estate of the testator. Such cases have arisen where the executor has filed a bill to have determined the respective rights of various legatees which under the ambiguous terms of the will are not clearly defined, and which the executor is justified in asking the aid of equity in construing. In such a case it is equitable that the common fund should bear the expenses of the proceeding. This cause however presents no such situation. Complainant seeks to have the court declare void testator's bequest to charity, and the trust failing, she would then take the property as heir. The suit is one plainly for her own interest alone, and not for the interest of the defendant trustees who have been in possession of the property for years and engaged in carrying out the terms of the will. No case has been pointed out to me in which the court has gone to the extent of allowing fees to complainant's solicitor out of a trust estate under conditions similar to those of the case at bar. The case most strongly in complainant's favor is that of Ingraham v. Ingraham, 169 Ill. 432, 48 N. E. 561, 49 N. E. 320. Were I willing to subscribe to the doctrine of that case as to the allowance of fees, which I am not, I feel that the rule should not be further extended to embrace an allowance to the heir in this suit for securing a second adjudication of the validity of the bequest in clause 5, inasmuch as a construction thereof as made by the Supreme Court of Illinois in 1898, which was binding on all parties save the complainant herein, and under which construction of the will the parties for years have acted. The trustees neither desired nor did they need a further adjudication that the trust was valid. This suit was of no benefit to them as a guide to their future administration of the trust estate, for complainant has no standing to secure for the trustees the direction of the court as to the administration of the trust."

It may be further observed that the Circuit Court would have no jurisdiction of a suit brought merely to construe a will in order to obtain specific direction as to the duties of executors or trustees; since the "amount in controversy" would be lacking. Kurtz v. Moffitt, 115 U. S. 487, 29 L. Ed. 459, 6 Sup. Ct. 150. It is the appellant's claim to the estate, founded on the position that the trust provision is invalid,

which gave the Circuit Court jurisdiction. The fact that such claim renders a construction of the will necessary does not entitle appellant to counsel fees, because the jurisdiction depends on her claim as heir, and not on her right to have, incidentally, a construction of the will.

The decrees of the Circuit Court are affirmed.