SIDNEY G. SANDUSKY, Executor, Appellant, v. JAMES M. SANDUSKY, Trustee, Appellant, and RODHAM ROUTT et al., Respondents.

Division Two, May 25, 1915.

1. APPELLATE JURISDICTION: Cross Appeals: Amount in Dispute: Attorney's Fee. Where both parties appeal, and the amount in dispute in either appeal is within the jurisdiction of the Supreme Court, both appeals are to that court. So that where the heirs appeal from a judgment sustaining a will and appellate jurisdiction of that appeal is in the Supreme Court, separate appeals by the executor and trustee from an order allowing a fee of $600 to the heirs' attorneys to be paid as costs out of the estate's assets are likewise to the same court.

2. WILL: Discretion of Trustee. A trustee to whom has been bequeathed money and property to be used primarily for the purchase, construction, maintenance and repair of a parsonage and a church edifice, and secondarily for the general advancement of Christianity, is entrusted with the power and responsibility of deciding how much of the trust fund is to be applied for each of the various purposes mentioned; nor can the court substitute its discretion for that of the trustee in° such matters, at least not until the trustee is guilty of some misconduct, or the trust becomes impossible of execution or is about to fail.

3. ————: ————: Interest of Heirs in Trust Fund. The heirs of the testator have no interest in a trust fund bequeathed to charity, nor are they necessary parties to a proceeding to have the court determine or direct the proper application of the fund.

4. ————: Attorney's Fee: Charge Against Trust Fund. Where the heir makes no claim under or in harmony with an unambiguous will which makes a valid gift to charity, but bases his whole claim upon the invalidity of the will or of some part of it, he is not entitled to have his attorneys' fees paid out of the trust fund as costs in the case. There is no equity in requiring a trust fund to remunerate those whose sole claim to

Sandusky, Exr., v. Sandusky.

consideration is the fact that they have endeavored to destroy that fund.

5. ———: ———: ———: **Heirs as Defendants.** And where the suit is brought by the executor of the will against the trustee and testator's heirs, who alleges in his petition that conflicting claims are set up as to the meaning and validity of certain clauses of the will, and asks for a construction of them, and the heirs in their answer aver that a controversy has arisen between them, the executor and trustee as to the validity of said clauses, and the will is unambiguous and valid, and the facts force the conclusion that the suit was caused by the contention of the heirs that said clauses were invalid, the heirs, although defendants, are not entitled to have their attorneys' fees paid out of the trust fund bequeathed by said clauses, as costs in the case.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnès*, Judge.

REVERSED.

*Sydney G. Sandusky, James M. Sandusky, Martin E. Lawson, Ralph Hughes* and *James S. Simrall* for appellants.

(1) The heirs were not trustees, and did not occupy any fiduciary relation, and did not have in their possession any fund to either hold or distribute, and the allowance of an attorney's fee to their attorneys, to be taxed as costs in the case and paid out of funds belonging to other persons, was not authorized by any principle of equity jurisprudence. Kimbal v. Bible Society, 65 N. H. 161; In re Donges' Estate, 103 Wis. 497, 74 Am. St. 885; Patton v. Ludington, 103 Wis. 629, 74 Am. St. 910; Rose v. Rose Association, 28 N. Y. 184; Downing v. Marshall, 37 N. Y. 380; In the Matter of Holden, 126 N. Y. 589; 22 Ency. Pl. & Pr., p. 211, "Trusts;" 2 White & Tredor's Leading Cases in Equity, Part I (4 Am. Ed. from 4 London Ed.), Am. note, pp. 548-9; Trustees v. Greenough, 105 U. S. 527; Turner v. Arnold, 147 Fed. 665, 7 L. R. A. (N. S.) 481; White v. Land Co., 49 Mo. App. 468. (2) The heirs vol-

untarily employed attorneys to represent them; their attorneys, by their answer, denied the validity of the trust, and claimed the trust fund for their clients, and upon this claim are now prosecuting an appeal to the Supreme Court from the decree which denies their claim, and their fee should be paid by their clients, and, not out of a trust fund which they are endeavoring to destroy.

*H. T. Herndon* and *Claude Hardwicke* for respondents.

(1) We have no statute in this State either authorizing or prohibiting costs as between solicitor and client in chancery cases, but whenever allowance of such costs appears to have been applied for, our courts have, whether awarding or refusing such costs, acted in perfect harmony with the practice prevailing in English chancery courts. The right of respondents to their judgment for attorney's fees in this case is to be determined by the common law and statutes of England. Sec. 8047, R. S. 1909; Baker v. Crandell, 78 Mo. 584; Brandon v. Carter, 119 Mo. 572. (2) To the executor as such, it is immaterial whether the trust property in his custody goes to legatees or to heirs, provided it is disposed of in the manner that the law requires; and immaterial whether any bequest is void or valid, except that he is interested in knowing whether it is void or valid, in order that he may know what disposition he should make of the property the testatrix attempted to dispose of thereby. This is not a case in which a judgment or decree could properly be taken, or rendered, either in favor of or against any party thereto; and is not, like an ordinary interpleader suit, a suit in which anyone is seeking to recover property, or to determine the title, as between adverse claimants, to property. If it were such a suit, the court, if none of the heirs had appeared, could properly have entered judg-

ment against them by default, and, as some of the heirs did not appear, it would have been proper for judgment or decree to have been, as to them, entered by default. But there is no property or title to property, or right to possession of property involved in this case; but the only purpose thereof is: To procure a proper answer to the following questions: What construction should be given to the bequests as to which the executor was in doubt? And what disposition should the executor make of the property the testatrix attempted to dispose of by said bequests? As stated by the Supreme Court of Michigan, In re Turner's Est., 48 Mich. 369, "Intestacy as to property purporting to be disposed of by will is a question of construction for the court, and cannot be settled by the admission of the parties." So it was the duty of the court, regardless of whether or not any of the heirs had appeared and regardless of any admissions that might have been made by parties to the suit as to the proper answer to said questions, to ascertain any and all facts that would tend to aid the court in properly answering said questions, and consider any and all law that might be either favorable or unfavorable to the validity of said bequests, and, after being fully advised, to answer said questions in accordance with the law. It was in the interest of the estate that the executor wanted said questions answered; and in the interest of the estate that the views of all parties interested be placed before the court; and that there be placed before the court any and all claims, argument and law, whether favorable or unfavorable to the validity of such bequests, in order that said questions might be properly answered. It is therefore just, proper, and equitable, that any and all parties who answered such summons, and submitted their views to the court, and such facts, arguments and law as they thought would tend to support their views, should be fully and fairly compensated for so appearing; and for submitting their views; and their right to such com-

pensation, since they appeared at the instance of the executor, does not depend upon whether or not any of their views were adopted by the court. 1 Redfield on Wills, star page 494; Perry on Trusts, secs. 747, 891, 903; Daniel's Chancery Prac. (5 Am. Ed.), star pages 1383, 1384, 1411, 1412, 1423, 1424 and 1436; Moggridge v. Thackwell, 1 Ves. Jr. 464; Moggridge v. Thackwell, 7 Ves. 35; Bishop of Hereford v. Adams, 7 Ves. 323; Currie v. Pye, 17 Ves. 462; Rose v. Rose Assn., 28 N. Y. 184; Downing v. Marshall, 37 N. Y. 380; Dean v. Dean, 54 Wis. 305; Scott v. West, 63 Wis. 588; Webster v. Morris, 66 Wis. 400; Scott v. Nevins, 77 Wis. 305. (3) The right of heirs, who participate, at the instance of an executor, in a suit properly brought by the executor to construe or ascertain the validity of parts of a will, and which was rendered necessary by some ambiguity in the will, or some reasonable doubt as to the legality or legal effect thereof; or who, when such a suit is necessary in order that administration may properly proceed, institute such a suit, and it is made possible, as a result thereof, for administration to proceed, to compensation therefor, has been recognized, we believe, by every American court that has had such a question to consider. In New York and Wisconsin, the amount of said compensation is fixed by statute; but in other states, it is fixed by the court. Jacobs v. Jacobs, 20 N. J. Eq. 49; Noe's Adm. v. Muller's Exr., 31 N. J. Eq. 234; Dean v. Home for Aged Women, 111 Mass. 132; Morse Admr. v. Stearnes, 131 Mass. 389; Brown v. Wright, 194 Mass. 540; Drew v. Wakefield, 54 Me. 291; Straw v. M. E. Church, 67 Me. 493; Woman's Miss. Soc. v. Mead, 131 Ill. 375; Ingraham v. Ingraham, 169 Ill. 432; Arnold v. Alden, 173 Ill. 229; Lombard v. Wolbeck, 178 Ill. 396; Dean v. Dean, 54 Wis. 305; Scott v. West, 63 Wis. 588; Webster v. Morris, 66 Wis. 400; Scott v. Nevins, 77 Wis. 305; Security Co. v. Pratt, 65 Conn. 161.

ROY, C.—A suit brought by the executor of the will of Mary E. Dorsey against her heirs and those claiming under the will to determine their respective rights was determined in the trial court against the heirs. They thereupon filed their motion for an allowance of their costs, including a reasonable attorneys' fee, to be paid out of the funds of the estate. That motion was sustained and a fee of $600 was allowed to H. T. Herndon and Claude Hardwicke, the attorneys for the heirs for their services in the cause.

The heirs appealed from the judgment and decree in the principal cause to this court, and the judgment was affirmed. That opinion is reported in 261 Mo. 351. The executor and James M. Sandusky, trustee under the will, appealed from the order allowing said attorneys' fee, and that appeal was sent to the Kansas City Court of Appeals, by which court it was, on motion of the heirs, transferred to this court.

Mrs. Dorsey was a widow, and died without issue. By her will she gave several legacies not necessary to be mentioned here. Clauses three and ten of the will were as follows:

"3. I give to my executor, hereinafter named, the sum of one thousand dollars, in trust, however, for the following purposes, to-wit: To be by him loaned out on unincumbered real estate at not more than five per cent per annum, and the interest, less the necessary costs and charges, to be used by him in keeping in repair the monument erected to the memory of my late husband, John S. Dorsey, deceased, and his two wives, and, also in keeping the lot in said 'Fairview Cemetery' on which said monument stands, in good condition. If at any time there should be an accumulation of interest not needed for the purposes aforesaid amounting to as much as five hundred dollars, then eighty per cent of such interest shall be paid by such trustees to the legatees or beneficiaries named in the residuary clause of this, my will, and as in said clause provided.

"10. I give and bequeath to the Odd Fellows Home at Liberty, Missouri, one wheel chair and chamber chair."

Clause twelve began as follows:

"12. I give, devise and bequeath, absolutely, all the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, to James M. Sandusky, in trust, to effectuate the following benevolences and charities, to-wit: One-fourth thereof, primarily, for the purchase, construction, furnishing, maintenance and repair of a parsonage for the occupancy of such pastors or ministers of the Gospel as may from time to time, in their ministerial capacity, serve the association of Christians in Liberty, Missouri, commonly known as 'The Presbyterian Church of Liberty, Missouri,' meaning thereby the congregation now worshipping in the church edifice located at the corner of Main and Mississippi streets in Liberty, Missouri, and for the construction, furnishing, maintenance and repair of a church edifice for said congregation aforesaid, commonly known as 'The Presbyterian Church of Liberty, Missouri'; and, secondarily, for the general advancement of Christianity, said parsonage shall be known as 'The Mary Elizabeth Dorsey Parsonage of the Presbyterian Church of Liberty, Missouri'; said charity may be executed by the trustee herein named, or by such trustee or trustees as said congregation may designate to receive said trust fund for said purposes."

Then followed in said twelfth clause and as a part thereof separate provisions in favor of the Second Baptist Church, the Methodist Episcopal Church, South, and the Christian Church, all of Liberty, which provisions were each exactly the same as the provision made for the Presbyterian Church set out.

The petition of the executor sets out the will *in haec verba*, and contains the following:

265Mo.15

"Plaintiff alleges that he is in doubt as to the true construction of said will, especially as to said clause numbered three in said will, relating to the bequest of one thousand dollars for keeping in repair the monument and lot in 'Fairview Cemetery' particularly described in said clause three; and as to said clause numbered ten in said will, relating to the bequest to the 'Odd Fellows Home at Liberty, Missouri'; and as to said clause numbered twelve in said will, relating to the bequest of the residue of the estate of said Mary E. Dorsey, deceased, left after the payment of certain legacies specified in said will, to the four several associations of Christians in Liberty, Missouri, known and described in said clause twelve as 'The Presbyterian Church at Liberty, Missouri,' 'The Second Baptist Church, at Liberty, Missouri,' 'The Methodist Episcopal Church, South, at Liberty, Missouri,' and 'The Christian Church at Liberty, Missouri;' that conflicting claims are set up as to the validity and meaning of said clauses three, ten and twelve in said will, and as to the rights and interests of said legatees named in said clauses three, ten and twelve, and as to the rights and interests of the heirs of said Mary E. Dorsey in the property bequeathed by said clauses, and plaintiff cannot, by reason of said conflicting claims, safely proceed in the execution of said will, and in the discharge of his duties as executor without the direction of this court."

The prayer of the petition is as follows:

"Wherefore plaintiff prays the judgment and direction of the court in regard to the true construction of said clauses three, ten and twelve of said will, and as to his duties in the premises."

The answer of James M. Sandusky, trustee, alleged his acceptance of the trust and prayed that said clause twelve be adjudged valid.

The answer of the heirs is long, alleging that the various religious associations of Liberty named in the

will then had and possessed church edifices, and that all except the Baptists had a parsonage. Many other facts not necessary to be here mentioned were stated in that answer as reasons why the third and twelfth clauses of the will should be adjudged void. That answer contained the following:

"These defendants further state that, by reason of the facts herein stated, the bequest the said deceased attempted to make to plaintiff Sydney G. Sandusky, executor, by article (or paragraph) three of said will, is contrary to, and not authorized by law, and is null and void and cannot be enforced or carried into effect, and that said deceased should be deemed to have died interstate as to the fund she attempted to dispose of by said bequest, and that such fund be distributed among the heirs of said deceased.

"These defendants further state that, by reason of the facts herein stated, a controversy has arisen between the heirs of said deceased, and plaintiff and the defendants who are not heirs of said deceased, as to the validity of said articles (or paragraphs) numbered three and twelve of said will, and as to the facts herein alleged, and as to the disposition that may properly be made of the property and funds said deceased attempted to dispose of by articles numbered three and twelve of said will; and, by reason thereof, these defendants desire an adjudication as to the validity of said articles number three and twelve of said will, as hereinafter prayed for, and, in case it should be held that either of said paragraphs of said will is valid, or capable of being carried into force or effect, or should be enforced or carried into effect, that the court fully construe the same as hereinafter prayed for, and cause the will of said deceased to be strictly complied with with relation thereto.

"These defendants therefore pray that the court adjudge and decree said articles (or paragraphs) numbered three and twelve of said will, and each of them,

null and void and not capable of being enforced or carried into force or effect; and that the trusts said deceased attempted to create thereby, and each of them, be adjudged and decreed null and void and worth-less and impracticable to enforce or carry into effect to have been created for the benefit of the heirs of said deceased; that it be adjudged and decreed useless and impracticable to enforce or carry into effect said arti-cles (or paragraphs) of said will, and that said corpo-ration and said associations, and each of them, and their trustees and representatives, be adjudged and decreed incapable of lawfully claiming any interest, either actual or beneficial, in or to the property or funds said deceased attempted to dispose of by said articles (or paragraphs) of said will; and, in case it should be found, adjudged or decreed by the court that said articles (or paragraphs) of said will, or either of them, or any part of either of them, are valid, or can be enforced or carried into effect, that the same be fully construed and interpreted by the court so as it will unmistakably appear by the court's decree how much or what portion, if any, of the property and funds said deceased attempted to dispose of by said will, is re-quired by said will to be used in the purchase of parson-ages; how much or what portions thereof, if any, in construction of parsonages; how much or what portion thereof, if any, in furnishing parsonages; how much or what portion, if any, in maintenance of parsonages; how much or what portions, if any, in repair of parson-ages; how much or what portion, if any, in construction of church edifices; how much or what portion, if any, in furnishing church edifices; how much or what por-tion, if any, in maintenance of church edifices; and how much or what portion, if any, in the repair of church edifices; and how much or what portion, if any, for the general advancement of Christianity; and the conditions subject to which said property and funds may be so used or applied; and that the court will

determine whether or not said property and funds, or any part thereof, can properly be expended on, or on account of, church edifices that existed previous to the death of said deceased, or parsonages that existed previous to her death, or on, or on account of, any parsonage that does not bear the name of deceased in connection with the name of the congregation served by the minister occupying the same, or that is not known as the Mary Elizabeth Dorsey parsonage of the congregation served by the minister occupying the same; and that the court will designate, define and point out the beneficiaries, if any, of said articles of said will and of the trusts said deceased attempted to create thereby; designate and define the portion, if any, of the property and funds said deceased attempted to dispose of by said articles of said will, that each of said beneficiaries shall receive, and the conditions, if any, subject to which each of such portions, if any, may be received, and the purpose for which each of such portions shall be applied, and require strict compliance with all such conditions and purposes, or, if the will of said deceased cannot be ascertained to a certainty, either as to the disposition that may properly be made of said funds and property, or any portion thereof, or otherwise, or if said trusts, or either of them, either by reason of uncertainty of beneficiaries, or of incapacity of any of the intended beneficiaries, or for any other reason, cannot be, or are not, carried out in strict compliance with the will of said deceased as the same may be found by the court, or if it should be useless, impracticable or unlawful to dispose of or use any portion of said property or funds in strict compliance with the will of said deceased as found by the court, that the court will order, adjudge and decree that any and all portions of said property and funds that cannot properly and lawfully be, or are not, or that it would not be useful or practicable to, dispose of in strict compliance with the terms and conditions of said will, be

distributed among, or descend to, the heirs of said deceased; and, that the court will grant such other and further relief as may seem just and proper.''

The court by its decree found that all the allegations of the petition were true, and that decree, among other things, contained the following:

''And the court further finds that plaintiff is entitled to the relief prayed in his said second amended petition, and now, here, upon the pleadings, evidence and facts as found herein, adjudges and decrees that the bequest of one thousand dollars to the executor of the will of Mary E. Dorsey, deceased, in trust, to be used in keeping in repair and good condition the monument erected to the memory of John S. Dorsey, deceased, and his two wives, in 'Fairview Cemetery,' Liberty, Missouri, and the lot on which said monument stands, is invalid, null and void, and that said legacy falls into and becomes a part of the residue bequeathed by clause twelve of said will to James M. Sandusky, as trustee, in trust to effectuate the charities specified in said clause twelve of said will.

''And the court further adjudges and decrees that the bequest of one wheel chair and one chamber chair to the 'Odd Fellows Home, at Liberty,' is a valid bequest, and that 'The Grand Lodge Independent Order Odd Fellows of Missouri' is legally entitled to receive and receipt for said bequest.

''And the court further adjudges and decrees that the bequest and devise of the residue of the estate of Mary E. Dorsey, deceased, by clause twelve of said will, to James M. Sandusky, in trust, to effectuate the charities designated in said clause twelve are a valid charity; and that said James M. Sandusky, as trustee, or such trustee as the said several religious associations may respectively designate to receive and receipt for said fund, is legally entitled to receive said residue, and his receipt shall be a valid discharge to said executor therefor.

"And the said James M. Sandusky, as trustee, or such trustee or trustees as the said several religious associations may respectively designate to receive and receipt for said trust funds, shall hold said funds for the purposes designated by said clause twelve of said will, and shall execute the trust created by said clause twelve, according to its terms, which the court here adjudges and decrees to be valid and binding, and in executing said trust shall apply one-fourth of said residue to each of said four religious associations primarily for the purchase, construction, furnishing, maintenance and repair of a parsonage, and for the construction, furnishing, maintenance and repair of a church edifice, for each of said four several associations, according to the terms of said clause twelve of said will, and as the trustee or trustees may find to be needful or proper in case of each association, and secondarily, for the general advancement of Christianity, the said trustee or trustees having the right and power to apply said trust funds under said clause twelve of said will, for the purposes designated by said clause twelve, and in the manner designated by said clause twelve, according to his or their judgment, as the necessities in each case may require, under the advice and direction of a court of equity, having jurisdiction in the premises whenever such advice or direction may be required, or may be deemed proper, and subject to the superintending control of a court of equity having jurisdiction in the premises.

"And the court further adjudges and decrees that the heirs of Mary E. Dorsey, deceased, have no right, title or interest in or to said money or property or residue so bequeathed by said clauses three, ten and twelve of said will, as herein set forth.

"And the court further adjudges and decrees that the costs of this proceeding be paid by plaintiff herein out of the trust funds in his possession and custody

as executor of the will of said Mary E. Dorsey, deceased.''

On the hearing of the motion for the allowance of the attorney's fee to be paid out of the estate, the heirs introduced evidence showing that $600 would be a reasonable fee for the services rendered. The motion for a new trial in the main case did not specially mention the point that the court had decreed that the $1000 mentioned in clause three of the will was a part of the residuary estate and, as such, should go to the trustee under the twelfth clause.

The assignment of errors made by the heirs in their brief in the main case contained the following:

''The trial court committed errors as follows:

''1. In holding that the $1000 the testatrix attempted to dispose of by clause three, should become residue, and be disposed of by clause twelve.''

No other allusion was made to that subject in any brief filed by either party either in the other appeal or in this.

I. This appeal was properly transferred here by the Kansas City Court of Appeals. Where both parties appeal, and the amount in dispute in either appeal is within the jurisdiction of this court, both appeals should be sent here. [Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629.]

*Appellate Jurisdiction.*

II. The question as to the power of the trial court to allow an attorney's fee in favor of the heirs to be paid out of the funds of the estate has been thoroughly and ably presented by counsel on both sides.

*Will Contest: Attorney's Fees.*

By an examination of the decided cases we find that the questions considered by the courts have arisen under the different wills in four different ways:

First, the validity of the will being conceded, the parties claiming thereunder or in harmony therewith have disagreed as to its meaning or construction.

Second, the meaning of the will being clear and undisputed there has been a controversy as to the validity of the will or of some part of it.

Third, both the validity and the construction of the will or of some part of it have been in dispute.

Fourth, both the validity and the construction of the will being undisputed, the court has been asked for directions as to the proper method and means of carrying the will into effect.

We have fully set out in the statement all facts bearing on the question as to whether the main case was a proceeding for the construction of the will. Both the petition and the answer speak of such construction, but neither of them mention any particular in which the court is called on to construe it, except that the answer of the heirs calls for a construction as to whether the $1000 mentioned in the third clause should go to the heirs or to the trustee if the third clause should be held void. The latter proposition was also mentioned in the assignment of errors in the other appeal, but was not mentioned anywhere else in any of the proceedings in the trial court or in the briefs of counsel on either side in this court in either appeal. The point seems to have been passed upon by this court in the other appeal simply because it was raised in the answer and in the assignment of errors. The law was so clearly against the heirs in that proposition that neither court nor counsel deemed it worth while to cite authority on the question. That feature was a mere incident of the case. Of itself it never would have caused a legal controversy, and we are driven to the conclusion that its presence in the case should not be effective to characterize the proceeding as one brought for the purpose of construing the will. The real controversy was as to the validity of the twelfth clause.

In that contest the purpose of the heirs was to destroy, not to construe, that clause.

There was one other purpose on the part of the heirs as shown by the answer. They asked that in the event the twelfth clause was held valid the court would direct how much of the trust fund should be applied for each of the various purposes mentioned in the answer. Under the will the trustee was entrusted with the power and responsibility of deciding those matters of detail in the discharge of the trust. It was held in State ex rel. v. Rusk, 236 Mo. l. c. 216, that the court cannot substitute its judgment and discretion for that of the trustee in such matters, at least not until the trustee is guilty of some misconduct, or the trust becomes impossible of execution or is about to fail.

It was held in Barkley v. Donnelly, 112 Mo. l. c. 570, and in Crow ex rel. v. Clay County, 196 Mo. l. c. 263, that the heirs have no interest in such trust fund; and in Women's Christian Assn. v. Kansas City, 147 Mo. l. c. 126, it was held that the heirs have no interest in such fund and that they are not necessary parties in a proceeding with reference to the proper application of the fund. Then, in so far as the heirs sought the direction of the court as to the use of the trust funds by the trustee, we find that they were not necessary parties to such proceeding, and that the court had not in any event the right to give such direction.

An examination of the trial court's decree shows that it made its directions no more definite than the will made them. The discretion in those matters was properly left in the trustee.

For the reasons above given the suit did not involve the construction of the will, nor was the court properly called upon or authorized to give the directions asked by the heirs with reference to the execution of the trust. It was purely a question as to the validity of the twelfth clause. Having determined the question as to the character and scope of that suit, we have no

difficulty in reaching a conclusion under the authorities. The heirs cite 1 Redfield on Wills (4 Ed.), p. 495, where it is said:

"And where the executor, or other person appointed to carry into effect the provisions of a will, comes into a court of equity, to obtain the direction of the court, in regard to the construction of the instrument, or the mode of carrying its provisions into effect, the expense of such litigation, as it respects all the parties, and as between the attorney and client, is charged upon the whole estate."

We concede that proposition, but it does not apply here, because this proceeding was not brought to construe the will or for the directions of the court. The heirs, who were defendants, improperly asked for such directions. The heirs cite 2 Daniel's Ch. Pl. & Pr. (6 Am. Ed.), p. 1383, as follows:

"So, also, where an heir at law is brought before the court in the case of a charity, he will be entitled to his costs; and in general, if he makes no improper point, he will be awarded them as between solicitor and client. And in a charity case, where an heir at law was made a defendant, pursuant to an order of the court, he was allowed his costs as between solicitor and client; although the court was, upon the hearing, of opinion that there was no resulting trust in his favor."

It should suffice to say that the lines immediately following the above quoted words in the book cited are as follows: "The rule that an heir at law is entitled to his costs, is not, however, without exceptions. Thus where an heir set up a claim to property as undisposed of under the will and failed, he was refused his costs."

The latest case by the English courts on the subject of costs in charity cases, Wilkinson v. Barber, L. R. 14 Eq. 96, decided in 1872, refused to allow costs to the heir as between solicitor and client in a charity case.

We feel justified in saying that there is no case in England or in the United States holding that the

heir is entitled to his counsel's fees out of the fund in a case where the will is free from ambiguity, and the heir makes no claim under or in harmony with it, but bases his whole claim on the invalidity of the will or of some part of it.

Ingraham v. Ingraham, 169 Ill. l. c. 472, involved both the construction and the validity of the will. The plaintiff claimed that it was void. He was defeated, but was allowed his counsel's fees because the will was ambiguous and required construction by the court.

Tincher v. Arnold, 147 Fed. 665, 677, in the Seventh Circuit, arose in Illinois. It was there held:

"When the terms of a will are so ambiguous that resort to a court of equity is necessary to obtain a construction of the said will it may be proper for the court to order the costs of the parties to the proceeding, together with reasonable solicitor's fees, to be paid out of the estate of the testator. Such cases have arisen where the executor has filed a bill to have determined the respective rights of various legatees which under the ambiguous terms of the will are not clearly defined, and which the executor is justified in asking the aid of equity in construing. In such a case it is equitable that the common fund should bear the expenses of the proceeding. This cause, however, presents no such situation. Complainant seeks to have the court declare void testator's bequest to charity, and the trust failing, she would then take the property as heir. The suit is one plainly for her own interest alone, and not for the interest of the defendant trustees who have been in possession of the property for years and engaged in carrying out the terms of the will. No case has been pointed out to me in which the court has gone to the extent of allowing fees to complainant's solicitor out of a trust estate under conditions similar to those of the case at bar. The case most strongly in complainant's favor is that of Ingraham v. Ingraham, 169 Ill. 432. Were I willing to subscribe to the doctrine of that case

as to the allowance of fees, which I am not, I feel that the rule should not be further extended to embrace an allowance to the heir in this suit for securing a second adjudication of the validity of the bequest in clause five, inasmuch as a construction thereof was made by the Supreme Court of Illinois in 1898, which was binding on all parties save the complainant herein, and under which construction of the will the parties for years have acted. The trustees neither desired nor did they need a further adjudication that the trust was valid. This suit was of no benefit to them as a guide to their future administration of the trust estate, for complainant has no standing to secure for the trustees the direction of the court as to the administration of the trust.''

Counsel for the heirs here say that the Tincher case was unlike this in that there had been a prior adjudication and that the funds had passed out of the hands of the executor. We are satisfied from all that is said in the Tincher case, and especially from its disapproval of the Ingraham case, that the court would have disapproved the allowance of attorney's fees regardless of the fact of the previous adjudication, which was evidently considered merely as an additional reason for the holding.

In Merrill v. Hayden, 86 Me. 133, it was held that where there was no ambiguity in the will the claimants should pay their own costs. Why should counsel cite a long list of cases to establish the conceded rule that where the will is ambiguous all parties to a suit for its construction will be allowed their counsel's fees, if such fees are payable in the absence of such ambiguity? The very statement of the rule excludes those cases where there is no ambiguity in the will. It should be said in this connection that we are not here deciding what character of persons can claim costs as between solicitor and client in suits to construe ambiguous wills under the rule quoted from Redfield. We concede the rule without discussing its limitations, simply holding,

as above stated, that the rule does not apply in this case for the reasons given. The allowance of such fees rests in the equitable discretion of the court, that discretion being regulated of course by equitable principles. There is no equity in requiring the trust fund to remunerate those whose sole claim to consideration is the fact that they endeavored to destroy that fund.

In their brief the heirs say:

"In this case, it must be kept in view that the heirs are in no manner attacking the trust of which the executor as such is trustee, but they simply ask that the property of such trust be disposed of by the executor in the manner that they believe the law, under existing conditions, requires; and that this suit was not instituted by heirs, and that it does not appear by evidence that any heir did any act, or made any claim, that rendered this suit necessary; or ever questioned the validity of the will; or any part thereof until after the executor instituted this suit and alleged that there was doubt in his mind as to the proper construction of three bequests, and indicated a doubt as to the validity thereof, and caused the heirs to be summoned, who submitted their views as to the disposition that should be made of the property the testatrix attempted to dispose of by said bequests; in order that he, said executor, might, through the aid of the court and of such heirs and legatees as might appear, and as a result of their efforts and exertions, ascertain what disposition he could lawfully make of the property the testatrix attempted to dispose of by said bequests."

We call attention to the fact that the petition alleges "that conflicting claims are set up as to the validity and meaning of said clauses three, ten and twelve." The answer of the heirs says "a controversy has arisen between the heirs of said deceased, and plaintiff and the defendants who are not heirs of said deceased, as to the validity of said articles (or paragraphs) numbered three and twelve of said will." The

decree found all the allegations of the petition to be true. The pleadings on both sides and the decree affirm that there was such contention on the part of the heirs as to the validity of clause twelve. We are driven to the conclusion that the suit was caused by that fact. Had it been otherwise, and the suit had been brought in the absence of such contention, and had the heirs filed a disclaimer of any interest under the will, their claim for costs "as between solicitor and client" would appear in a different light.

The judgment is reversed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the Court. All the judges concur.