IN RE ESTATE OF HUGHES: FITTON, EXR., APPELLANT, *v.*
BEELER ET AL., APPELLEES, ET AL.

144

(No. 909—Decided May 4, 1946.)

*Messrs. Williams, Fitton & Pierce,* for appellant.
*Messrs. Sohngen, Parrish & Beeler* and *Messrs. Harmon, Colston, Goldsmith & Hoadly,* for appellees.

Ross, J.  This originally was an appeal on questions of law and fact from a decree of the Court of Common Pleas of Butler county, Ohio, rendered in a statutory proceeding, constituting an appeal on questions of law and fact to that court from the Probate Court of Butler county.  A question being raised as to whether this court, upon a second appeal, could retry the facts, and all counsel consenting, the appeal was reduced to an appeal on questions of law and time was given to file a bill of exceptions, assignments of error and briefs in this court.

From the record it appears that Mary Hughes Beeler, one of the heirs of the decedent, for whom appellees have continuously been counsel, requested the executor of the estate to institute an action for the construction of the will of such decedent and that this request was granted by the executor and an action instituted to construe such will.

Appellees represented Mary Hughes Beeler and other heirs throughout the proceedings to construe

the will; such heirs having been made defendants in the action.

Answers were filed by such heirs, whose counsel are the appellees in the instant proceeding, in which such heirs joined in the prayer of the executor for a construction of the will.

The will in question provided in substance for the creation of a trust estate which was to be used for the erection and equipment of a hospital in Butler county for the treatment of contagious and infectious diseases contracted by citizens of such county. When the extent of the estate so to be placed in trust was finally and fully estimated, it was suggested that, even allowing for the full performance of the wishes of the testator as to such erection and equipment, there would be a considerable surplus remaining in such trust estate. Two divergent constructions of the will as to the disposition of such surplus were advanced by the executor and the heirs.

It was the contention of the executor that the trust was valid, and reading the whole will it was evident that the testator desired all of such trust estate to be used in promoting the hospital project, that even though it was apparent that the testator thought such trust estate would be entirely expended in erecting and equipping such hospital, it was his manifest intention that any surplus, after performing such direction, should still be used for the further carrying on of the project and that, therefore, such surplus, if any, should be used for replacement of equipment, repairs, and even for current maintenance.

The contention of the heirs was: (1) That the entire trust was invalid; (2) That if the trust was not invalid *in toto*, then as to any such surplus existing after the erection and equipment of the hospital, the estate was intestate and should be distributed to such heirs.

The construction case was fully considered by successive courts in trial and upon appeal, resulting in a final determination sustaining the construction advanced by the executor as to any surplus. He and his counsel were allowed a very substantial sum covering costs and attorneys' fees.

An application was made in the Probate Court by the *attorneys* for the heirs for fees. The Probate Court refused such request, and appeal on questions of law and fact was taken to the Common Pleas Court of Butler county. That court, after a full hearing of the facts, allowed the *attorneys for the heirs* $20,000. It is such allowance of fees that the executor now seeks to have set aside by the instant appeal.

Attorneys representing such heirs are not parties to the action to construe the will. See Page on Wills, *post*. The application of such attorneys for fees, therefore, cannot be considered as a continuation of such action to construe the will, but, on the contrary, constitutes a separate ancillary proceeding in which such attorneys apply to the chancery powers of the Probate Court to grant them equitable relief. The propriety of the application being made by the attorneys instead of by the heirs for necessary expenses including fees for their counsel is passed, and no point will be made as to whether such situation is prejudicial to the claims of these appellees, no objection upon this basis being advanced by appellant executor.

The appeal to the Common Pleas Court from the Probate Court being upon questions of law and fact, resulting in a trial *de novo*, the Common Pleas Court became invested thereby with the same chancery powers possessed by the Probate Court and had full power to pass upon any equitable claim for compensation possessed by the heirs.

The right to compensation for appellees is predi-

cated on four grounds. They conclude their brief with this statement:

"In summing up this problem, we believe we have shown the court that all of the various elements required for an allowance of compensation in a will construction action are presented in this case, to wit:

"*First*: The testator's will was ambiguous and it was necessary to construe the meaning of the same.

"*Second*: Despite the trial court's findings, there was no attack against the will, nor was there any question involving the preservation of assets.

"*Third*: Services rendered by counsel for the heirs-at-law were beneficial to the court and to the estate in clearing up the issues created by the eighth item of the subject will, because, in the words of the courts:

" ' * * * the provisions of his will must be made clear to all interested parties before the same can be made effective, * * * for the result of the proceeding benefits the estate to the extent of determining questionable matters in the will, and thus permitting an expeditious settlement of the estate.'

"*Fourth*: The law of the state of Ohio and that of other states, generally, places in the jurisdiction of the courts the right to make an allowance of compensation in a will construction action, where the same is *necessary*, where the questions are *genuine and bona fide*, and where the questions are not litigated *captiously, capriciously, and without reason*."

The opinions of the judges in the Probate and Common Pleas Courts in the instant proceeding are found attached to the respective briefs of the appellants and appellees.

In these opinions, as well as in the briefs of counsel, will be found cited many cases from Ohio and other states as well as citations to established text books. It is difficult in these cases to harmonize the conclusions

reached unless the varying facts involved are taken into consideration. It would extend this opinion unduly to analyze in detail the particular facts involved in these citations. However, some comment on these various authorities, as related to the adverse contentions of the parties to this appeal is required.

A general statement of the rules applicable to the instant question is found in 4 Page on Wills (Lifetime Edition), 607 *et seq.*, Ch. 49, Section 1613 *et seq.* Here it is stated:

"In the absence of statute, apportionment of costs and attorneys' fees in a suit to construe a will is within the discretion of the court, since the proceeding is one of an equitable nature. * * *

"In some jurisdictions it is held that in a suit for construction, the defeated claimant can not have his costs or attorney's fees out of the estate. Costs may be awarded against the unsuccessful party. In other jurisdictions, it is held that if the ambiguity of the will caused the difficulty in construction, the executor and all the parties in interest, the defeated party, as well as the successful party, are entitled to costs out of the estate, but the rule is said not to apply if the suit is not brought for construction merely, but in reality to attack the will and to enable the litigant to obtain something as an heir. * * *

"In some jurisdictions parties to construction suits other than executors, trustees and the like, may not be compensated for attorneys' fees unless the executor refuses to act.

"If there is a genuine and *bona fide* controversy, which involves the estate in general, and the services of the attorneys are of value to the estate in presenting the problem of construction to the court, attorneys' fees for all the parties are allowed out of the estate in most jurisdictions, including the attorneys' fees of

the defeated party, but this rule does not apply to fees incurred by unsuccessful parties attacking the will and asserting rights contrary to it, rather than seeking construction. Allowance of costs and attorney fees to the defeated party can be justified on the theory that the difficulty in construction was created by the testator, not by the defeated party; and that the cost of obtaining a judicial construction of such a will should be borne by testator's estate, and it is immaterial whether or not a trust is involved. Allowance, if made, should be to the party and not to the attorney; except in the case of a guardian *ad litem* appointed for a minor. * * *

"If the services of the attorneys are rendered solely for the benefit of certain parties and are not for the benefit of the estate, attorneys' fees can not be awarded out of the estate, even though the estate is incidentally benefited by having adverse claims decided. If the suit is unnecessary, as where the will is unambiguous and the party who asks for attorneys' fees has no interest in the fund, or if he has no interest which entitles him to a construction attorneys' fees will not be allowed."

In *Moskowitz* v. *Federman,* 72 Ohio App., 149, 51 N. E. (2d), 48, an action for a declaratory judgment was instituted by an heir and legatee of a testator seeking construction of a will. Two devisees as well as the trustees named in the will were made parties defendant. When the case was called for trial, it was found the plaintiff heir and the trustees were in accord as to the construction of the will, and the devisees then requested and were permitted to file pleadings challenging the validity of the trust created by the will. The validity of the trust was sustained. A clause in the will provided that any next of kin or beneficiary named in the will who "shall begin or maintain any

proceeding to challenge or deny any of the provisions of this will'' shall thereby forfeit any legacy given him under the will. In the opinion at page 164, it is stated:

''A proceeding for a declaratory judgment must be based upon an actual controversy. The proceeding does not lie to obtain a judgment which is merely advisory or which merely answers a moot or abstract question. A court will not take jurisdiction to render a declaratory judgment where there is no question of difference between the parties and both sides are asking for the same judgment, and the proceeding in reality is one to obtain the advice or opinion of the court and no more. 50 A. L. R., 45, Anno. IV c.''

And, again, on the same page:

''The court thereupon permitted the present appellants to controvert the claims of validity, and, after argument, determined, upon the issues thus created, the validity of the item of the will in dispute, and at the same time barred the appellants from participation, for the reason that they violated the provisions of Item V.

''The action of the appellants was the only way possible to secure a construction of the will, which was the very thing desired by everyone in the litigation. A request for construction in which issues are joined and argument had should not be interpreted as a violation of the conditions against challenge or contest under these circumstances.''

It would seem that that case was intended only to hold that such an adverse position as that taken by the defendant legatees did not bring them within the disinheriting clause, and the opinion goes no further than that.

In *Neff* v. *Neff*, 2 Disn., 468, 13 Dec. Rep., 287, in the Superior Court of Cincinnati, the limits of the application are found in the following quotations from the

opinion:

"After full argument, I have held that some of the grounds assumed by the defendant, as well as some assumed by the executors, are alike tenable."

"It is clear then, upon authority, whenever the fund to be divided is complicated with a trust, to be performed by the executors, and there is a doubt as to their powers, or the mode in which they are to be executed, and it becomes necessary to obtain the opinion of the court, in relation to the equities involved, all the costs accruing in consequence of the application, whether of the trustees or the devisees, are a charge upon the common estate.

"The principle must be nevertheless, so far restricted, as to forbid its application, when the devisees litigate questions captiously, capriciously, and without reason; but when the points in controversy are presented by all the parties, and the court derives light from the counsel of both, and at last decree upon a principle admitted by both, differing only in the mode of its application, and all interested are to be equally benefited, we have no hesitation in holding the estate responsible for all the expenses incurred."

In *Schmalstig* v. *Conner*, 46 F. Supp., 531, the question involved arose in determining a proper administration expense deductible under the Federal Income Tax Law. The holding is limited to a finding that the Probate Court has authority to allow attorneys' fees in an action to construe a will. It is to be noted that the services of such attorneys resulted in a construction of the will rendering it partially invalid.

In *Schreiner, Exrx.*, v. *Cincinnati Altenheim*, 63 Ohio App., 42, 25 N. E. (2d), 296, in a decision by this court, an award of compensation to attorneys was reversed and set aside. The holding of this court is set out in the third paragraph of the syllabus:

"Where the interests of the beneficiaries of the trust are such that any allowance of compensation out of the trust fund to an attorney for one of the beneficiaries would have the effect of requiring the only other beneficiary affected by such allowance to pay for services that produced a result detrimental to her pecuniary interests, no allowance payable out of the fund should be awarded. Under such circumstances, such services are beneficial only to the litigant by whom the attorney was employed and whatever right he has to compensation is against such client thus benefited."

*Fifth-Third Union Trust Co., Trustee,* v. *Davis,* 55 Ohio App., 377, 10 N. E. (2d), 4, is authority for the propositions set out in the third and fourth paragraphs of the syllabus:

"3. In an action by the testamentary trustee for the construction of such will, the court has authority to award compensation for services rendered by counsel for defendants, the ultimate beneficiaries, to be paid out of the trust estate; and a reviewing court will not reverse or modify the award, in the absence of exceptions thereto, no error in the exercise of authority being presumed.

"4. An award of such fees is not an abuse of discretion when the court apportions it among the attorneys whose services have assisted in the correct construction of the will, and in the preservation of the corpus of the trust estate for the ultimate beneficiaries, living and unborn."

The appellees cite several Illinois cases. These are all considered in the opinion in *Cravens* v. *Haas,* 318 Ill. App., 447, 48 N. E. (2d), 611 (also cited by appellees). A quotation from that case clearly states the Illinois law upon this subject:

"Appellants, however, strenuously insist that since this suit was filed by plaintiffs solely for the purpose

of attempting to enforce a supposed interest of their own, they are not entitled to attorneys' fees or expenses. While the law is well settled in this State that when the construction of a will is not necessary, those who file a suit for construction to enforce a supposed interest of their own are not entitled to attorneys' fees or expenses out of the estate if they are ultimately held not to have any interest (*Bartlett* v. *Mutual Ben. Life Ins. Co.*, 358 Ill., 452; *Brumsey* v. *Brumsey*, 351 Ill., 414; *Village of Hinsdale* v. *Chicago City Missionary Society*, 375 Ill., 220; *Waxenberg* v. *Brown*, 299 Ill. App., 225; *Moody Bible Institute of Chicago* v. *Pettibone*, 289 Ill. App., 69), the law is also well settled that when there is sufficient ambiguity in regard to the testator's intention as expressed in his will as to make it necessary to go into a court of chancery to get a construction of the will in order to determine which of two or more adverse claims to the same property is valid, the costs of the litigation should be borne by the fund or property in question even though the will is ultimately construed adversely to the contention of plaintiffs. In *Guerin* v. *Guerin*, 270 Ill., 239, the court said at pages 250, 251:

" 'It is the settled law of this State that where a will is so ambiguous or uncertain as to require construction, the costs and expenses of the proceeding to construe, including reasonable fees for complainant's solicitors, should be taxed against and paid by the estate.

" 'The case of *Ingraham* v. *Ingraham*, 169 Ill., 432, was one brought to construe a will, and though the court below construed the will adversely to the contention of the complainant, an allowance was made as fees to the solicitor for complainant, and in passing upon that case this court said: "In view of the ruling of this court in *Woman's Union Missionary Society* v. *Mead,*

131 Ill., 338, we do not regard the allowance of the fee as erroneous." ' "

As, at least, one of the heirs for whom appellees have continuously been counsel throughout the proceedings to construe the will, made demand upon the executor to institute such proceeding, it may be considered that the Illinois courts would sustain the position of the appellees as in effect representing an heir who requested construction of a will, which was found to require construction. For all intents and purposes, Illinois may be considered as being in the column favoring appellees' position.

In *Singer* v. *Taylor,* 91 Kan., 190, 137 P., 931, Ann. Cas. 1915C, 713, the second paragraph of the syllabus is:

"Where there is ambiguity in the provisions of a will and a real controversy as to its construction it is competent for the court to allow reasonable attorneys' fees out of the estate to the defeated as well as the successful party."

And, at page 192 of the opinion, it is stated:

"Here the estate was large, it being estimated at a quarter of a million dollars, and the daughter, who was defeated, was only given outright $500 and to that was added the income to be derived from $10,000. All the remainder of the estate was given to her brother. We can not say that the application to the court to construe the will, in which both parties joined, was not made in good faith, and therefore it is a case in which the court may justly exercise its discretion in awarding costs and also in the allowance of attorneys' fees out of the estate."

New York decisions are influenced and controlled by the New York statute, quoted in *In re Billings' Estate,* 141 N. Y. Misc., 84, 252 N. Y. Supp., 576:

"When the decree is made in a proceeding to construe a will, the surrogate may, in his discretion, allow to an executor, trustee, guardian, or any party to said proceeding, such sum as the surrogate deems reasonable for his counsel fees and other expenses necessarily incurred in such a proceeding, and the decree may direct payment to the attorney for whose services such allowance is made."

In *Noe, Admr.,* v. *Miller's Executors,* 31 N. J. Eq., 234, it is stated at page 238 of the opinion:

"Shall the complainant pay costs, or be allowed costs out of the fund in dispute? Where the true construction of a will is involved in doubt, so that two or more persons may fairly make adverse claims to the same fund, either may resort to a court of equity for an interpretation, and, though his claim may be pronounced invalid, he may still be entitled to costs and a reasonable counsel fee out of the fund. The litigation, in such a case, is indispensable to the proper administration of the fund, and it should, therefore, bear the costs of the litigation as part of the expenses incident to its administration. *Attorney General* v. *Moore's Exrs.,* 4 C. E. Gr., 503. A suit in this case was necessary and proper, indeed, unavoidable; all persons having any interest in the fund, have been made parties, and have been afforded an opportunity of being fully heard. A decision of the complainant's claim practically settles the rights of all parties and leaves nothing for future dispute. He should, therefore, I think, be allowed his costs and a reasonable counsel fee out of the fund."

Cases involving fees to guardians *ad litem* are obviously not helpful. Of such is: *American National Bank, Exr.,* v. *Meadors,* 162 Tenn., 324, 36 S. W. (2d), 86.

In *Trautz* v. *Lemp,* 334 Mo., 1085, 72 S. W. (2d), 104, the first paragraph of the syllabus is:

"Where an instrument creating a trust estate is so ambiguous that two or more persons may fairly make adverse claim to the fund, either may resort to a court of equity for an interpretation and the court may assess costs of the litigation and allow reasonable attorneys' fees against the estate to both the defeated and successful parties.

"But the rule does not apply when the purpose is not merely to secure a construction of the trust instrument but to obtain something as an heir. In such case the cost and attorneys' fees should not be allowed even though the litigation incidentally settled the status of the trust estate."

And at page 1096 of the opinion, the court says:

"Kathryn H. Trautz bases her appeal on the ground that the allowance made to her for attorneys' fees was inadequate, while the executors and trustees claim an allowance in any sum would be against the law under the circumstances.

"We believe the contention of the executors and trustees must be sustained. In the first place, the efforts of her attorneys were mainly directed to declaring the trust void because it violated the rule against perpetuities. As we have seen in paragraph one of this opinion, a trust fund is not liable to attorneys for their fees when their efforts sought to destroy the trust. In the second place, under the will of her father, Mrs. Trautz was left only one thousand dollars which had been paid her. The only interest she could possibly have under these circumstances would be to have the will declared invalid. She could not possibly be interested in the construction of the will, her only interest would be in the destruction of it. She filed the third suit and it was an action for partition. For her to

succeed in this action, it would have been necessary for her to destroy the trust estate.

"Construction of Wills, by Thompson, on page 801, the author says:

" 'As a rule costs and attorneys' fees are allowable as in other equitable cases, or cases wherein trustees are parties, but this rule does not apply where the bill is not filed merely for the purpose of obtaining a construction of the will and the direction of the court, but to enable complainant to obtain something as heir, *nor should the costs be paid out of the estate where it is determined that the complainant has no interest in any event.'* "

In *Kimball, Admr.,* v. *Bible Society,* 65 N. H., 139, 23 A., 83, 84, 85, it is stated in the syllabus:

"In an equity suit, brought by an executor for the construction of a will on which depends the right to property in dispute between a legatee and an heir, the claimant who does not prevail is not entitled to the payment of his taxable costs or counsel fees out of any part of the estate."

In *Mudge* v. *Mudge,* 155 Md., 1, 141 A., 396, it was held the "Orphans' Court" had only a statutory jurisdiction and could not allow fees to counsel for an heir who failed in securing a construction for which he contended.

In *Tramell* v. *Tramell,* 162 Tenn., 1, 32 S. W. (2d), 1025, at page 24 of the opinion it is stated:

"The suit was filed to maintain rights asserted in opposition to the will and not under it, necessitating the employment of counsel by the executors and trustees to defend the will and the trust estate created thereunder. Inasmuch, however, as the complainant has been successful in upholding his contention that the testator died intestate as to his personal estate not specifically bequeathed, we think it a proper exercise

of discretion to tax all of the costs of the cause against the executors and trustees, as a charge against the estate, and it will be so ordered.''

In *Sandusky* v. *Sandusky*, 265 Mo., 219, 177 S. W., 390, the court refused attorneys' fees to heirs' counsel, where the will was held to be unambiguous, and they sought a construction declaring it invalid.

Reference has been made to *Trustees* v. *Greenough*, 105 U. S., 527, 26 L. Ed., 1157. That case involved an entirely different question than that here under consideration, being the rights of parties in a trust fund claimed to be misapplied by trustees.

*In re Lyons' Will*, 290 N. Y. Supp., 30, 160 N. Y. Misc., 429, is merely authority for the proposition that:

''Attorneys who represented testator's son on unsuccessful appeal from Surrogate's decree construing will *held* not entitled to allowance from testator's estate in addition to allowance awarded in Surrogate's original decree.''

In *Davis* v. *Mitchell*, 27 Tenn. App., 182, 178 S. W. (2d), 889, 894, the 65th and 66th paragraphs of the syllabus are:

''Fees for services of an attorney not employed by personal representative are allowed out of assets of decedent's estate only where services have inured to benefit of the estate.

''Where it appeared that services rendered by complainants' solicitors were designed to bring about a breach of testamentary trust, and not to preserve trust, complainants were not entitled to have reasonable attorneys' fees paid out of estate, notwithstanding that complainants were impleaded in cross-bill whereby executrix and trustee sought a construction of the will.''

Also, in the opinion, it is stated at page 247:

''Fees for the services of an attorney not employed

by the personal representative are sometimes allowed out of the assets but only where the services have inured to the benefit of the estate. The estate·here is a trust for a specific purpose. In view of the conclusion we have reached as to the construction of the will, the services rendered by the plaintiffs in error must be regarded as designed and calculated to bring about a breach of the trust, not preserve it. There is, we think, .no rational basis for charging the estate with the payment for services of that kind. While the situation was somewhat different in the case of *Tramell* v. *Tramell, supra,* the rationale of the conclusion denying a similar claim is against the allowance in this case.''

In *St. Louis Union Trust Co.* v. *Kaltenbach,* 353 Mo., 1114, paragraphs 14, 15 and 16 of the headnotes as reported in 186 S. W. (2d), 578, are:

''Generally, where testator has expressed himself so ambiguously as to make it advisable to institute an action to obtain a construction of will, it is proper to order payment out of estate of reasonable fees of attorney of party instituting the action, irrespective of the outcome of the action, but such rule is not followed where purpose of action is to destroy the estate.

''In action by successor testamentary trustee to construe will and for directions as to distribution of trust estate, allowance to the trustee for attorney's fees was proper, but allowances of attorney's fees to defendants each of whom was contending for a construction under which he could obtain the whole estate for himself was improper.

'':In action to obtain construction of ambiguous will allowance of attorney's fees to defendants is not authorized except where defendants' efforts resulted in real benefit to the estate.''

These authorities fairly represent the opinions of courts and text writers upon the problem here pre-

sented. A careful examination of the opinions will demonstrate that there is as indicated in the quotations from Page on Wills, *supra,* no great divergence in the rules to be applied and that the apparent difference in conclusions reached is due to the various situations presented by the facts involved.

What was the real position of the heirs?

Did such position in the will-construction case constitute an *attack* upon the will as distinguished from a bare request for construction thereof?

It was an heir, one of the clients of appellees, who asked for a construction in the first place. Demand was made upon the executor to institute such proceeding and he complied. The heirs, clients of these appellees, through whom the latter only can claim compensation contended, first, that the creation of the trust was *invalid.* This practically amounted to a contest of the will. Had the heirs succeeded in convincing the courts that they were correct, such conclusion would have resulted in almost an entire intestate disposition of the estate. The trust created for the benefit of the hospital would have entirely failed and the heirs would have inherited the estate by intestate disposition. Had the heirs been successful in their alternate contention, to a certain extent, the same result would have ensued. A large surplus would have been subject to intestate distribution to them. That the position of the heirs was adverse and wholly antagonistic to the will and the executor seeking to sustain same is shown in the briefs in the instant case, filed by appellees:

"It was the contention of appellees that the entire trust was invalid, for the legal reasons presented in oral argument and in briefs before the lower court; and it was also the contention that if the entire trust was not invalid, then that such portion of the estate as remained after building and equipping the hospital,

would pass to the heirs-at-law as intestate property by way of a resulting trust.''

''Does counsel for the executor contend, in the face of the finding by the Probate Court, that Mr. Hughes' will was not ambiguous and did not need to be interpreted, or that an adverse claim did not fairly exist?''

After a construction was given by the trial court, the heirs appealed. They would have had no standing in any appellate court unless they could have shown they *were prejudiced* by a construction of the will adverse to their interests. The executor occupying a neutral position would have had to rest content with a construction adverse to his contentions, certainly as far as the surplus was concerned. *First Natl. Bank* v. *Rawson,* 54 Ohio App., 285, 7 N. E. (2d), 6.

The will was constantly sustained by successive courts and the heirs as constantly appealed.

The size of the fee paid to the executor and his counsel was certainly affected by the services required of them made necessary by such successive appeals. Other costs were directly due to such continued assertion of the interests of these heirs.

It seems clear, therefore, that the suit was ''not brought for *construction merely,* but in reality to attack the will and to enable'' *these litigants to obtain the estate or a large portion thereof as heirs.*

Again, referring to Page on Wills, notice the statement in the text on page 609, quoted *supra,* ''but this rule does not apply to fees incurred by unsuccessful parties attacking the will and asserting rights contrary to it, rather than seeking construction.'' Where such is the case the claim of ''services of value to the estate'' fails. Other authorities herein noted sustain the same rule. Such services may be of value to a court in reaching a conclusion upon adverse claims, but not by the farthest stretch of imagination could the services

of these appellees in behalf of their clients, the heirs, be considered of any value to this *estate*. Any services rendered by counsel in their arguments and briefs submitted to the court may not be considered as justifying a charge upon the estate, merely because such services aided the court in the performance of his duties, for which he is at least presumed to receive full compensation elsewhere. If such were not the case, an *amicus curiae* would have as just a charge upon an estate as any attorney for a party.

There is a vast distinction, therefore, between services to the *court* and services to an *estate*.

Authorities, hereinbefore noted, justify the conclusion that, "even though the estate is incidentally benefited by having adverse claims decided," this feature alone does not warrant the awarding of fees to those who are manifestly advancing the personal, selfish interest of those who can participate in an estate only by a construction rendering provisions of the will invalid.

Referring to the claims of these appellees, as hereinbefore set out: (1) The court did determine that the will required construction; (2) the position, attitude, and conduct of the heirs constituted an attack upon the will, and went far beyond a mere sincere request for construction thereof; (3) the services rendered were in behalf of the clients of these appellees, and, although of possible though doubtful service to the court, were obviously not only not a service to the estate, but resulted in a substantial depletion thereof; (4) the Probate Court had jurisdiction in the exercise of its equity powers to award compensation in a proper case, but not where, under guise of requesting a construction of a will, heirs seek to obtain a declaration of its invalidity and an intestate distribution to them of the entire estate or a substantial part thereof.

It is to be noted in connection with a consideration of the authorities cited herein, that it was finally determined in the action to construe the will that the heirs had no interest *present* or *future* in the estate of the testator. As was noted, this has a decided bearing upon their status and the right of their counsel to compensation out of the estate.

It may also be noted that the question of surplus after erecting and equipping the hospital is a matter still of estimate only. It would seem that a demand might more properly have been made for construction of the will *after* such surplus had been definitely ascertained. This too indicates that the real purpose of the heirs in demanding construction at once was to secure the entire destruction of the trust estate, rather than a mere direction as to the surplus.

Every court is reluctant to deny attorneys the compensation which they sincerely believe due them. However, when the claim of such attorneys is predicated upon principles of equity, their right to such compensation must be shown to rest clearly upon equitable principles.

The Probate Court concluded that the equities were not with these appellees, and for the reasons given, this court agrees with the Probate Court, thus requiring, the facts not being in dispute, that the judgment of the Court of Common Pleas of Butler county be reversed, and judgment be here entered for the appellant.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and ROSS, JJ., concur in the syllabus, opinion and judgment.